[Crim. No. 5016.   Second Dist., Div. Three.   Oct. 22, 1953.]

THE PEOPLE, Respondent, v. FRED SMITH NARRON, Appellant.

Cletus J. Hanifin for Appellant.

Edmund G. Brown, Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Respondent.

SHINN, P. J.—Fred Smith Narron was convicted in a jury trial of the murder of Richard R. Brotherton, the offense being found by the jury to be murder of the second degree, His motion for a new trial was denied and he appeals from the judgment and the order.

Mr. and Mrs. Brotherton, Mr. and Mrs. Counts, and appellant and his wife, were neighbors in the town of Norwalk. San Antonio Drive extends north and south. The Narrons lived at number 12901. Their house fronted south and was located about 75 feet west of San Antonio on a paved driveway

which extended east and west. About 100 feet west of the Narron house, and beyond the westerly edge of the paved driveway, was a duplex, numbered 12903 and 12903½. The Brothertons lived in the north half of this duplex. Immediately south, and but a few feet away was another duplex, 12905, 12905½. Each duplex had two entrances which led to a sidewalk extending north and south. South of the paved driveway, distant about 20 feet therefrom, and equidistant from the Narron house and the Brotherton duplex, was number 12909 where Mr. and Mrs. Counts lived. East of their house was a lawn extending south from the paved driveway, and to the east of the lawn a dirt driveway which extended to San Antonio Drive.

There was evidence of the following facts: On the evening of June 1, 1952, Mr. and Mrs. Brotherton, with their small girl and their baby, visited at the Narron residence. At about 10 p. m. they went to the Counts residence where they found Mr. and Mrs. Narron and Mr. and Mrs. Counts, who were drinking beer and watching television. Soon afterwards a son of the Narrons came in. The three men left for a time, the three women and the children remaining. After the men returned defendant put his hands on Mrs. Counts; she arose, rebuked him and told him to keep his hands off her, but defendant followed her and again put his hands on her. In a short time the men again left the house, went to town and returned with a bottle of whiskey from which Brotherton and defendant drank. While Mr. Counts was out of the room defendant took hold of Mrs. Counts and pulled her clothes up to the waistline. She pulled away and went into another room, returning with a car wrench. These occurrences were in the presence of Mrs. Brotherton and Mrs. Narron. Mr. Counts then took defendant outside and Brotherton followed. On the porch defendant spoke in derogatory terms of the women, saying that every woman had her price, and he suggested in indecent language that the men go to look for other women. His statements were resented by Mr. Counts. The men went out to the Counts' car. There was loud talking. Mrs. Brotherton left the house and went across the lawn to get her husband to leave. Defendant put out his foot and tripped her and she fell against the car and to the ground. Mr. Brotherton said: "Now, look what you did." Defendant and Brotherton started fighting. Defendant got Brotherton down and was hitting and choking him. Counts took hold of defendant and pulled him off Brotherton. Defendant

turned around and said to Counts: "Oh, you are the fellow who bitched . . ." that he was "the son-of-a-bitch" who pulled him off Brotherton when he had him down, and he ran at Counts, struck him with his fist, breaking his nose. Brotherton arose and he and Mrs. Brotherton walked away. Counts held defendant's arms and when he let him loose defendant hurried to his house past the others. Mr. and Mrs. Brotherton walked to the paved driveway opposite the Narron house, Mrs. Brotherton preceding her husband. After they reached the paved driveway they turned toward their own house. Brotherton had no weapon or other object in his hand. Defendant came out of his house, called: "Hey, Richard"; Brotherton turned his head and defendant hit him in the face with a shovel, knocking out teeth and fracturing his skull. Defendant reentered his house. Brotherton expired a short time afterwards in a hospital. On several occasions a few months before the fatal encounter defendant had made threats against Brotherton. He exhibited a gun to Mr. and Mrs. Counts and said that if Brotherton (applying a vile name) came onto the driveway he would kill him. He made similar threats and upon one occasion Mr. and Mrs. Counts took him into their house when he threatened Brotherton and said that he was going "to beat him up." Upon his arrest defendant admitted striking Brotherton with the shovel but denied having struck him during the fist fighting. His defense was that Brotherton was chasing him and that he struck in self-defense. The preponderance of the evidence was to the contrary.

The sole contention on the appeal is that the elements of murder were not proved and that the evidence established no more than the offense of manslaughter. The evidence which we have summarized refutes this contention. Defendant was in an ugly mood and bent upon making trouble; his insulting treatment of Mrs. Counts and the tripping of Mrs. Brotherton were invitations to conflict. His previous threats disclosed his animosity toward Brotherton. Reasonable inferences were that when he was chided by Brotherton and Counts he started the fist fighting, and that his attack upon Counts was unprovoked. Both Brotherton and Counts were cut and bruised by defendant's fists. The actions of defendant clearly indicated that when the fist fighting was over and the Brothertons were on their way home, he hurried to his house to get a weapon. His conduct in calling to Brotherton and striking him when he turned around proved that he

intended to attack him without giving him an opportunity to defend himself.

If the killing was upon a sudden quarrel or heat of passion and without malice aforethought the offense would have been voluntary manslaughter. (Pen. Code, § 192.) Defendant says there was no substantial evidence of malice as defined by section 188 Penal Code, that is to say, there was no evidence of a deliberate intention to take away the life of Brotherton, and hence no evidence of express malice; also that there was considerable provocation for the act and that the circumstances of the killing did not show an abandoned and malignant heart; consequently there was an absence of evidence of implied malice. The jury concluded that defendant acted with malice aforethought and that conclusion has ample support in the evidence. His previous threats were evidence of a purpose to inflict bodily harm upon Brotherton; his quarrelsome and ugly state of mind before the conflict indicated that he was the aggressor in his fist fight with Brotherton, as he was in his encounter with Counts; his hurrying to get a dangerous weapon after the encounter was over and his brutal and unprovoked assault upon the unsuspecting and defenseless Brotherton was convincing proof of malice. A conclusion that defendant acted without malice would have been contrary to the reasonable inferences which would follow from a dispassionate consideration of the evidence. There was considerably more evidence tending to prove evil motive and malice, and far less tending to show provocation, than was present in the case of *People* v. *Holt*, 25 Cal.2d 59 [153 P.2d 21], where it was held that the evidence warranted a conviction of murder of the second degree. Defendant was justly convicted of that offense.

The judgment and the order are affirmed.

Wood (Parker), J., and Vallée, J., concurred.