[Crim. No. 6227.   Second Dist., Div. Three.   Mar. 12, 1959.]

THE PEOPLE, Respondent, v. ARTHUR LEE WILLIAMS, Appellant.

Burton Marks, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

SHINN, P. J.—In a jury trial upon an information charging him with selling heroin and offering to sell marijuana, Arthur Lee Williams was convicted of the former offense and was sentenced to state prison. He appeals from the judgment.

It is not contended on the appeal that the evidence was insufficient to support the verdict. Williams admitted selling the contraband to a state narcotics inspector. His defense was that he was entrapped into committing the offense by one Altee Maney, an informant acting under the inspector's direction. Appellant caused Maney to be served with a subpoena to attend the trial; Maney did not appear; a bench warrant was issued; appellant obtained two postponements of the trial date in order to locate Maney; September 11, 1957, the matter was again called for trial; appellant sought a further postponement to locate Maney as the latter's whereabouts were unknown; the court denied his motion. The contentions on the appeal are that Williams should have been granted another continuance and that the court erred in excluding from the evidence a tape-recorded statement allegedly made by Maney one month after the sale of the heroin. We have concluded that the contentions are not sustainable and that the appeal is without merit.

On April 25, 1957, Inspectors Lennon and Ojeda of the State Bureau of Narcotics Enforcement arrived in San Luis Obispo to conduct an undercover investigation of narcotics activities. The officers were introduced to Altee Maney by a district attorney's investigator who told them that Maney was an informer; they knew Maney as "Butch" and did not learn his true name until it was disclosed at appellant's preliminary hearing.

The following evening, Inspector Ojeda went with Maney to the Morocco Club, a bar frequented by members of the Negro race. Maney was to indicate the patrons who were engaged in the traffic of narcotics. While the inspector was sitting at a table, appellant approached and introduced himself. The next night, April 27th, Ojeda returned to the premises. He drove onto the parking lot just as a car containing Williams and Maney was leaving; the two men hailed Ojeda, who parked and walked over to their car. After a short conversation Williams asked the inspector if he wanted to buy some narcotics; Ojeda replied that he did. The two men drove away, promising to return later in the evening. Ojeda entered the establishment. Several hours later, he saw Williams and Maney standing at the bar. Appellant motioned to Ojeda to join them. Ojeda then arranged to buy two bindles of heroin from Williams for $15; Maney did not participate in the negotiations. The inspector gave the money to appellant, who left the premises and returned in a few minutes. Williams led

Ojeda to the men's room and handed him two bindles containing a substance that was proved to be heroin. The inspector asked Williams if he could obtain any marijuana and the latter replied that he thought he could obtain some marijuana cigarettes.

On April 29th, Inspector Ojeda, Williams and Maney drove to Santa Maria in search of narcotics; their efforts were unsuccessful. On May 10th, Ojeda met appellant at the Morocco Club and gave him $5.00 to buy marijuana; appellant left, promising to return with the narcotics, but he did not do so.

Inspectors Lennon and Ojeda testified that they did not furnish any narcotics to Maney and that as far as they knew Maney did not furnish any narcotics to appellant.

Williams testified in his own defense that he had known Altee Maney for seven of eight years. He saw Ojeda in Maney's company at the Morocco Club on April 26th but was not introduced to him. At the club the following evening, Maney told appellant that he needed money and wished to sell some narcotics but he did not want Ojeda to know that the narcotics belonged to him. Maney offered to give Williams half of the profit if he would sell the heroin to Ojeda and appellant agreed. After handing Williams the narcotics, Maney approached Ojeda and told him that appellant knew where he could get some heroin but that it would cost him extra for appellant's trouble. Ojeda consented and handed $15 to the informer, who gave it to appellant. Williams left the club. Upon his return, he gave Ojeda the heroin which Maney had previously handed him. Williams admitted driving to Santa Maria with Ojeda and Maney; he explained that they were looking for marijuana and that he went along for the ride. He also admitted taking $5.00 from Ojeda to buy marijuana; he lost the money playing dice and had no idea where he could obtain the contraband.

Jacob Charles Hawkins, a minister of the gospel, testified, over the People's objections, that he was present at a conversation between Altee Maney and appellant's wife on June 22nd at the Morocco Club. In reply to Mrs. Williams' questions about the source of the heroin which her husband had sold to Ojeda, Maney stated that the inspector had given the narcotics to one Annie Lee; that she had given them to him (Maney); and that he (Maney) had given them to appellant.

There is no merit to Williams' contention that the court abused its discretion in denying him a third continuance in order to locate Altee Maney. It was established by the testimony of sheriff's deputies called by appellant that the authori-

ties had exercised due diligence in endeavoring to serve the bench warrant on the absent witness. Maney was traced to Los Angeles but the Los Angeles Police Department was unable to locate him. The matter was one within the sound discretion of the trial court. (Pen. Code, § 1050; *People* v. *Markos*, 146 Cal.App.2d 82, 86 [303 P.2d 363].) In the absence of an affirmative showing as to Maney's whereabouts and that his testimony could have been obtained within a reasonable time, it was not an abuse of discretion to deny a continuance. (*People* v. *Wade*, 118 Cal. 672 [50 P. 841]; *People* v. *Collins*, 195 Cal. 325, 333 [233 P. 97].)

There is likewise no merit to appellant's contention that the court committed reversible error in excluding Maney's tape-recorded statement. The statement was elicited by appellant's counsel the day following the conversation in the Morocco Club which was related by the witness Hawkins; it allegedly contained an admission that Maney had furnished appellant with the heroin he sold to Inspector Ojeda. The district attorney objected to the introduction of the recording on the ground that it was hearsay; the court sustained his objection. Appellant's counsel then offered to prove the contents of the recording for the purpose of establishing that Maney was acting as a government agent, that he had instigated the transaction and that the defense of entrapment was a valid one. The offer of proof was rejected by the court.

If there was a relationship between Maney and Inspector Ojeda, as appellant contends, it had already terminated when the former's statement was recorded. It is sufficient to say of this point that in view of Hawkins' undisputed testimony as to a similar statement by the informer it cannot be said that Williams suffered any material disadvantage or prejudice by reason of the challenged ruling.

The question of entrapment was a close one. If the facts were as testified to by appellant the offense of entrapment would have been established; but it was not established as a matter of law. The factual issue was fairly tried and resolved against appellant under two adequate instructions given by the court at his request.

The judgment is affirmed.

Wood (Parker), J., and Vallée, J., concurred.

A petition for a rehearing was denied April 10, 1959, and appellant's petition for a hearing by the Supreme Court was denied May 6, 1959.