THE PEOPLE, Plaintiff and Respondent, v. ALVIN
MAURICE PARHAM, Defendant and Appellant.

Paul Robbins, under appointment by the Supreme Court, for Defendant and Appellant.

Stanley Mosk, Attorney General, John S. McInerny, Eric Collins and Albert W. Harris, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

TRAYNOR, J.—Defendant was convicted on three counts of first degree robbery. (Pen. Code, § 211a.) He appeals from the judgment and from the order denying his motion for a new trial. The appeal from the order denying a new trial is dismissed. (Pen. Code, § 1237.)

Defendant contends that he was denied the right to inspect the signed statements of several witnesses and therefore was denied a fair trial, that he was placed in an improperly conducted lineup and therefore his identification by several witnesses was unreliable and prejudicial as a matter of law, that he was arrested without probable cause and therefore the search incident to his arrest was unreasonable, and that when he was arrested the police forced evidence from his mouth by unconstitutional methods.

Defendant was arrested on July 21, 1961, and on the same day was placed with five other men in a police lineup at the Berkeley Police Station. During the lineup, each man in turn tried on defendant's hat and coat. After observing the lineup several witnesses of the three bank robberies for which defendant was convicted identified defendant as the robber. These witnesses also identified defendant at the trial. Defendant contends that his hat and coat did not fit any of the other men in the lineup and that therefore the witnesses' identification of him was unreliable and prejudicial. This contention is without merit. The manner in which the lineup was conducted affects only the weight of the witnesses' testimony, not its admissibility. The witnesses were thoroughly cross-examined concerning the lineup. It was the jury's function to consider the circumstances of the lineup in weighing the witnesses' testimony. The jury's implied finding that identity was established is supported by the evidence.

At the trial most of the identifying witnesses testified that after the lineup they gave signed statements to agents of the Federal Bureau of Investigation. Defendant moved for production of the statements. The prosecution responded that the statements were not available to it. Inspector Young of the Berkeley Police was present when the witnesses were interviewed by the F.B.I. and took notes of the interviews but did not take signed statements. Defendant was given a copy of Inspector Young's notes and also the statement of one identifying witness taken by the Berkeley Police.

In chambers the prosecutor stated that he had been permitted to examine the statements taken by the F.B.I., that he had tried to obtain the statements but that the F.B.I. had

rejected his request, and that he did not have the statements in his possession and no longer had access to them. Upon the trial court's suggestion defendant then obtained a subpoena duces tecum directing Special Agent Buchanan of the F.B.I. to appear with the investigative file on the bank robberies. Agent Buchanan appeared with an assistant United States attorney who advised the court that Agent Buchanan could not produce the investigative file because of order No. 3229 of the Attorney General of the United States. Agent Buchanan testified that he had delivered the file to the assistant United States attorney and that he could not testify concerning the contents of the file because of order No. 3229. Defendant's motion that Agent Buchanan be held in contempt was denied. The court also denied defendant's subsequent motion to strike the testimony of all witnesses whose signed statements had not been produced.

█ Order No. 3229 compelled Agent Buchanan to refuse to produce the F.B.I. file.[1] That order is valid and has the force of federal law. (*United States* ex rel. *Touhy* v. *Ragen,* 340 U.S. 462 [71 S.Ct. 416, 95 L.Ed. 417]; *Jackson* v. *Allen Industries, Inc.,* 250 F.2d 629.) The trial court was therefore bound by the executive order and properly refused to hold Agent Buchanan in contempt. (See *Boske* v. *Comingore,* 177 U.S. 459 [20 S.Ct. 701, 44 L.Ed. 846]; *Appeal of United States Securities & Exchange Com.,* 226 F.2d 501, 516-520; *Ex parte Sackett,* 74 F.2d 922; *In re Valecia Condensed Milk Co.,* 240 F. 310; *Stegall* v. *Thurman,* 175 F. 813; *In re Weeks,* 82 F. 729; *In re Huttman,* 70 F. 699; *Hubbard* v. *Southern Ry. Co.,* 179 F. Supp. 244.)

█ Defendant contends that because the signed statements were not produced he was deprived of a fair trial by the denial of his motion to strike the witnesses' testimony. Had the witnesses' statements been in the possession of the prose-

---

[1]Order No. 3229 provides that when an employee of the Department of Justice is served with a subpoena or order to produce information in the files of the department, a representative of the United States attorney shall appear with the employee and inform the court that the employee is not authorized to produce or disclose the information sought. Time must then be requested to refer the matter to the Attorney General. In this case the assistant United States attorney stated that he would communicate with the Attorney General and advise the court if he were given any other instructions. Defense counsel thereafter conceded that the statements could not be produced, and the court denied the motion to hold Agent Buchanan in contempt. (18 Fed. Reg. 1368.)

cution an order to produce would have been proper. (*People* v. *Estrada,* 54 Cal.2d 713, 716 [7 Cal.Rptr. 897, 355 P.2d 641]; *People* v. *Chapman,* 52 Cal.2d 95, 98-99 [338 P.2d 428]; *People* v. *Riser,* 47 Cal.2d 566, 585-588 [305 P.2d 1].) Moreover, had defendant been prosecuted under federal law the statements could have been produced under the Jencks Act. (18 U.S.C.A. § 3500.) It does not follow, however, that the use of the witnesses' testimony even though their prior statements were unavailable deprived defendant of a fair trial. The prosecution did not withhold the statements, but on the contrary made every effort to obtain them from the F.B.I. The prosecution cannot be penalized because those efforts failed. The prosecution is not penalized if, through no fault of state officials, a material witness for the defense is unavailable at trial. (*People* v. *Wade,* 118 Cal. 672, 673 [50 P. 841]; *People* v. *Williams,* 168 Cal.App.2d 624, 626-627 [336 P.2d 245]; see *People* v. *Collins,* 195 Cal. 325, 333 [233 P.97].) It does not appear that the statements were unavailable because of any improper activity by state officials. The police were under no compulsion to take statements from the witnesses. (See *People* v. *Tuthill,* 31 Cal.2d 92, 97-98 [187 P.2d 16].) There is nothing to show that the police conspired with the federal agents to deprive defendant of the statements. The prosecution was therefore entitled to use the testimony of the witnesses even though their signed statements were unavailable.

The evidence concerning defendant's arrest shows that while on patrol on the afternoon of Friday, July 21, 1961, Officer Donovan of the Emeryville Police drove to a parking area at the foot of Powell Street in Emeryville and there saw defendant standing between a line of parked cars and the bay. He asked defendant "if he had some trouble," and defendant replied that he was on his lunch hour. Defendant also said that he worked at the San Pablo Cleaners, and that his lunch hour ended at 1 p.m. It was then 1:18. Officer Donovan asked for identification, and defendant took a money clip from his pocket and produced a temporary driver's license. Officer Donovan saw in the money clip a red or maroon bank passbook and a folded pink piece of paper that he thought was a check. He then wrote the name, address, and description from the driver's license on a field interrogation card.

Officer Donovan connected the description on the driver's license with a Berkeley Police bulletin that he had in his car and that he had seen several times. The bulletin gave an account of one of the bank robberies for which defendant has

been convicted and contained a description and composite sketch of the robber. On the morning of July 21 Officer Donovan had looked at another copy of the bulletin posted at police headquarters. Officer Donovan was also aware that there had been a bank robbery on a previous Friday afternoon and that a stolen car used in the commission of the robbery had been abandoned afterward at the foot of Powell Street.

When Officer Donovan completed the field interrogation card, defendant told him that his car was parked up the street and that he had additional information in it. Defendant then voluntarily rode with Officer Donovan to defendant's car. On the way Officer Donovan radioed headquarters for assistance. The patrol car was parked behind defendant's car, both men got out, and defendant entered his car through the right front door and sat on the seat while Officer Donovan stood outside the open door. Defendant then took out his money clip, removed the pink paper, and put the paper in his pocket. Officer Donovan asked what the paper was, and defendant said that it was a check. After Officer Donovan asked to see the check, defendant withdrew it from his pocket, put it in his mouth, and rolled over face down on the seat of the car. After a struggle Officer Donovan arrested defendant, and both defendant and his car were searched. Incriminating evidence obtained in the search was admitted at the trial over defendant's objection.

Defendant's contention that he was arrested without probable cause cannot be sustained. The knowledge that a stolen car had been used in a bank robbery and abandoned in the Powell Street parking area and the unlikely explanation defendant gave for being there justified Officer Donovan's asking defendant for identification. (See *People* v. *Mickelson*, 59 Cal.2d 448, 450-451 [30 Cal.Rptr. 18, 380 P.2d 658].) Officer Donovan did nothing unreasonable in taking defendant to his car, since defendant said he had further information there and voluntarily rode in the patrol car. Having connected defendant's description with the description on the police bulletin, Officer Donovan was justified in asking to see the check that defendant put in his pocket. With his suspicion thus already justifiably aroused, Officer Donovan had probable cause to make an arrest when defendant began chewing the check. The search that followed was incident to the arrest and was therefore lawful. (*People* v. *Mickelson*, 59 Cal.2d 448, 451 [30 Cal.Rptr. 18, 380 P.2d 658].)

■ We agree, however, with defendant's contention that the methods used by the police in obtaining the check from his mouth were unreasonable and in violation of due process. (*Rochin* v. *State of California,* 342 U.S. 165, 172-173 [72 S.Ct. 205, 96 L.Ed. 183, 190-191, 25 A.L.R.2d 1396, 1402-1403].) When defendant rolled over face down on the seat of the car, Officer Donovan entered the car and began wrestling with him in an attempt to extricate the check. At this point, Officer Spongberg arrived in response to the call for assistance. Officer Spongberg leaned through the left front window of defendant's car and with the fingers of both hands began to press on defendant's cheeks. Defendant continued to chew on the check. Officer Spongberg then took Officer Donovan's police club and struck defendant twice on the back of the neck. Defendant then spit out the bloody fragments of the check.

The struggle lasted between five and seven minutes. It is undisputed that defendant neither resisted arrest nor attempted to flee and that the officers' only objective in the fray was to extract the check from defendant's mouth. Under these circumstances the force used by the officers was excessive. Choking a man to extract evidence from his mouth violates due process. (*People* v. *Erickson,* 210 Cal.App.2d 177, 181-182 [26 Cal.Rptr. 546] ; *People* v. *Sevilla,* 192 Cal. App.2d 570, 573-578 [13 Cal.Rptr. 714] ; *People* v. *Martinez,* 130 Cal.App.2d 54 [278 P.2d 26].) Clubbing a man to obtain evidence is equally brutal and offensive, and the check thus obtained should not have been admitted into evidence.

It is clear, however, that even had the check been excluded from evidence, the result would have been the same. Although the check was relevant because in each of the three bank robberies the robber used a pink piece of paper or a check to demand money, it was merely cumulative of other undisputed evidence in the record. Thus, its masticated remnants showed only that it was a check, a fact established by the officer's testimony as to what he heard and saw before any illegal conduct occurred and by defendant's own testimony at the trial. Moreover, the other evidence of defendant's guilt is overwhelming. Eyewitnesses to each of the robberies identified defendant as the robber. In one robbery defendant escaped with a bank bag of money. Shortly thereafter, the owner of a car stolen from Golden Gate Fields saw defendant return the car. Defendant attempted to explain that he thought the car was his, then got out of the car with a money bag in his hand and fled. The evidence shows that

the car had been hot-wired. The car used in another of the robberies and abandoned in the Powell Street parking area had also been hot-wired. Defendant was experienced in hot-wiring, and at the time of his arrest in the Powell Street area was carrying the wires and tools customarily used in hot-wiring. A gun and savings passbook like those found in defendant's possession when he was arrested were used in one or more of the robberies.

Defendant contends, however, that the admission of the check in evidence constituted a denial of due process of law and that therefore the harmless error rule cannot save the judgment. He invokes the rule that the admission of an involuntary confession in evidence requires reversal regardless of other evidence of guilt presented to the jury. (*Lynumn* v. *Illinois,* 372 U.S. 528 [83 S.Ct. 917, 922, 9 L.Ed. 2d 922]; *Rogers* v. *Richmond,* 365 U.S. 534, 540-541 [81 S.Ct. 735, 5 L.Ed.2d 760, 766-767]; *Payne* v. *Arkansas,* 356 U.S. 560, 567-568 [78 S.Ct. 844, 2 L.Ed.2d 975, 980-981]; *Stroble* v. *State of California,* 343 U.S. 181, 190 [72 S.Ct. 599, 96 L.Ed. 872, 880-881].) Almost invariably, however, a confession will constitute persuasive evidence of guilt, and it is therefore usually extremely difficult to determine what part it played in securing the conviction. (See *Payne* v. *Arkansas,* 356 U.S. 560, 568 [78 S.Ct. 844, 2 L.Ed.2d 975, 981]; Allen, *Federalism and the Fourth Amendment: A Requiem for Wolf,* 1961 Sup.Ct.Rev. 1, 45; cf. *Hamilton* v. *Alabama,* 368 U.S. 52, 55 [82 S.Ct. 157, 7 L.Ed.2d 114, 116-117].) These considerations justify treating involuntary confessions as a class by themselves and refusing to inquire whether in rare cases their admission in evidence had no bearing on the result.

Unlike involuntary confessions, other illegally obtained evidence may be, as in this case, only a relatively insignificant part of the total evidence and have no effect on the outcome of the trial. To require automatic reversal because of its admission is to lose sight of the basic purpose of the exclusionary rule to deter unconstitutional methods of law enforcement. (*Elkins* v. *United States,* 364 U.S. 206, 217 [80 S.Ct. 1437, 1453, 4 L.Ed.2d 1688, 1669]; *Mapp* v. *Ohio,* 367 U.S. 643, 656 [81 S.Ct. 1684, 6 L.Ed.2d 1081, 1090-1091]; *People* v. *Cahan,* 44 Cal.2d 434, 443, 445 [282 P.2d 905, 50 A.L.R.2d 513].) Unless we were to take the unprecedented step of holding that the state must be penalized for violating a defendant's constitutional rights in securing evidence by

conferring an immunity upon him (see *People* v. *Valenti,* 49 Cal.2d 199, 203 [316 P.2d 633]), we must consider the deterrent effect of the exclusionary rule not as a penalty but as derived from the principle that the state must not profit from its own wrong. (*Walder* v. *United States,* 347 U.S. 62, 64-65 [74 S.Ct. 354, 98 L.Ed. 503, 506-507]; *McDonald* v. *United States,* 335 U.S. 451, 456 [69 S.Ct. 191, 93 L.Ed. 153, 158-159]; *People* v. *Martin,* 45 Cal.2d 755, 760 [290 P.2d 855].) The state does not so profit when erroneously admitted evidence does not affect the result of the trial. A reversal for the admission of illegally obtained evidence without regard for prejudice when there is compelling legally obtained evidence of guilt constitutes nothing more than a penalty, not for the officer's illegal conduct in securing the evidence, but solely for the prosecutor's blunder in offering it and the trial court's error in admitting it. To require automatic reversal for such harmless error could not help but generate pressure to find that the unreasonable police conduct was lawful after all and thereby to undermine constitutional standards of police conduct to avoid needless retrial. (See *People* v. *Mickelson,* 59 Cal.2d 448, 452 [30 Cal.Rptr. 18, 380 P.2d 658]; *People* v. *Ditson,* 57 Cal.2d 415, 439-440 [20 Cal.Rptr. 165, 369 P.2d 714].) An exclusionary rule so rigidly administered could thereby defeat itself. We conclude that since there is no reasonable probability that the admission of the check in evidence affected the result, the judgment must be affirmed. (Cal.Const., art. VI, § 4½; *People* v. *Tarantino* 45 Cal.2d 590, 595 [290 P.2d 505]; *People* v. *Valenti,* 49 Cal.2d 199, 203 [316 P.2d 633]; *People* v. *Edgar, ante,* p. 171 [32 Cal.Rptr. 41, 383 P.2d 449]; *People* v. *Regalado,* 193 Cal.App.2d 437, 442-443 [14 Cal.Rptr. 217]; *People* v. *Gardner,* 177 Cal.App.2d 43, 46-47 [1 Cal.Rptr. 830]; see *People* v. *Woods,* 133 Cal.App.2d 187, 191-192 [283 P.2d 778]; *People* v. *Morgan,* 146 Cal.App.2d 722, 724 [304 P.2d 138].) Any implication to the contrary in *People* v. *Erickson,* 210 Cal.App.2d 177, 183 [26 Cal.Rptr. 546] is disapproved.

The judgment is affirmed.

Gibson, C. J., Schauer, J., McComb, J., Peters, J., Tobriner, J., and Peek, J., concurred.

. Appellant's petition for a rehearing was denied October 16, 1963.