[Crim. No. 1650. Fourth Dist. May 18, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. HENRY HALEY, Defendant and Appellant.

Langford, Langford & Lane and J. Perry Langford for Defendant and Appellant.

Stanley Mosk and Thomas C. Lynch, Attorneys General, William E. James, Assistant Attorney General, and Gilbert F. Nelson, Deputy Attorney General, for Plaintiff and Respondent.

COUGHLIN, J.—The defendant appeals from a conviction of murder in the second degree and urges a reversal upon the grounds that: (1) The evidence was insufficient to establish the corpus delicti of the offense without resorting to extrajudicial statements made by the defendant; (2) instructions on the felony-murder rule erroneously limited those on voluntary manslaughter; (3) instructions on assault with a deadly weapon erroneously failed to include the factor of general intent; (4) the admission of statements by the victim expressing her fear of injury by the defendant was error; and (5) the admission of incriminating statements made by the defendant violated the rule announced in *People* v. *Dorado*, 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361].

The defendant maintained two households, in one of which he lived with his wife, and in the other with the victim, Barbara Miller and his two children by her. On August 10, 1963, at about 1:20 a.m., defendant came to the household where the victim and her children were living; at about 1:30 a.m. went next door to the home of his landlord; awakened the latter; and stated "I shot Bobbie. She grabbed the gun." The landlord, who believed the victim to be the defendant's wife, went to the home; found she had been shot in the head; and called the police. After notifying the landlord of the shooting, the defendant returned to the scene and then went to the home of his wife, where he was arrested. At the time of his arrest he had the gun that caused the victim's death

in his coat pocket. Bloodstains were on his shirt, coat and trousers. The victim, who was right-handed, had been shot by a gun fired close to the left side of her head. She died from the wound thus inflicted. In addition to the gunshot wound, there was another wound which went ''practically all the way through the skin.'' Blood was spattered on one of the walls in the room where the victim had been shot, and also on the wall near the light switch. When the police arrived a lamp was found on the floor in that room, apparently having been knocked from the table.

After his arrest, on the way to the police station, in response to questions by the officer concerning what had happened at the shooting, the defendant gave contradictory accounts saying he had the gun in his hand and it went off; that he didn't mean to do it; that the victim had the gun in her hand and it went off; that she had the gun in her left hand when it went off; that he had the gun in his hand, the victim grabbed it, and it went off at that time. In response to questioning at the police station the defendant said he was sitting across the room from the victim when the gun went off.

On two occasions prior to the incident in question the defendant had threatened to kill the victim. On another occasion he engaged in an argument with her, knocked her down, and pointed a knife at her.

The defendant claims that the evidence, absent his extra-judicial statements, is not sufficient upon which to base a finding that the shooting was not self-inflicted or did not occur as the result of an accident and, for this reason, the corpus delicti was not established. The evidence heretofore noted, even excluding the statements to the landlord and to the officers, supports inferences that there was a struggle in the room where the shooting occurred; that in the course thereof the victim was struck on the side of the head with a gun; that, as she was right-handed and was shot in the left side of her head, she did not do the shooting; that the defendant was a participant in the struggle; that it was he who did the shooting; that he had a motive to kill the victim; that the shooting was not accidental; and that he shot with malice aforethought.

The wound in the left side of the victim's head could not have been inflicted by firing the gun with her right hand. The fact she was right-handed supports an inference that if the wound was self-inflicted, if she had intended to commit suicide, she would have held the gun with her right hand and shot herself in the right side of the head. The defendant

contends the victim could have held the gun with both hands and thus intentionally fired the shot into the left side of her head. His argument in this regard goes to matters involving the weight of the evidence, and the availability of inferences from facts shown by accepted evidence, rather than to the sufficiency of the evidence and the availability of equally reasonable inferences to support a prima facie showing that the shooting was not suicidal. Evidence supporting the conclusion the victim and the defendant had engaged in a struggle that culminated in the shooting, and the further conclusion, inferred from prior acts and threats of violence, that he had a motive for killing her, sufficiently establish a prima facie showing that the killing was not accidental but was with malice aforethought. (*People* v. *Cartier,* 54 Cal.2d 300, 311 [5 Cal.Rptr. 573, 353 P.2d 53]; *People* v. *Chaves,* 122 Cal. 134, 143 [54 P. 596]; *People* v. *Barthleman,* 120 Cal. 7, 14 [52 P. 112]; *People* v. *Narron,* 120 Cal.App.2d 766, 769 [261 P.2d 769].)

The defendant has directed our attention to other evidence in support of his position that a prima facie showing of the corpus delicti was not made without resorting to his extrajudicial statements. We have considered such but conclude it does not compel the conclusion he urges as a matter of law.

At the trial the defendant testified that when he entered the home there was no light except in the bathroom; that he turned on a light in the kitchen; that he went into the living room and sat on the sofa; that the victim, who was in the bedroom, asked him if he was coming to bed and he replied in the negative stating that he wished to relax and listen to the radio; that thereafter he heard the victim coming through the hall, saw her momentarily but did not see anything in her hand; that he paid no attention to her; that he then heard a click and looking up saw the victim sitting on a divan across from him holding a gun in both hands; that he asked: "Bobbie, what are you doing with the gun?"; that she made no reply but started to stand; that she was holding the gun at waist height in an upward direction; that he jumped up and grabbed her hand; that when he grabbed her hand it was around the gun which was at shoulder level; that the gun went off; that he did not shoot her nor intend to shoot her.

The court instructed upon the so-called felony-murder rule by which the jurors were told that the unlawful killing of a human being is murder of the second degree when the killing is done in the perpetration of a felony, such as an assault with

a deadly weapon. The court also instructed on voluntary manslaughter. It is apparent from the record before us that the trial judge did not believe there was sufficient evidence to support a voluntary manslaughter charge but gave the instructions respecting such in deference to the request therefor by counsel for the defendant. In large part, the instructions so given were submitted by the latter. On appeal, defendant contends that the instructions on the felony-murder rule, insofar as they related to assault with a deadly weapon, conflicted with the instructions on voluntary manslaughter in that the jury was not advised that an assault with a deadly weapon committed in a sudden quarrel and heat of passion might not be the basis for a conviction of murder in the second degree. Defendant's argument in support of this contention is directed to segregated parts of the entire charge on the issues in question. ▮ When considered as a whole, the instructions on the felony-murder rule cannot be said to have limited the instructions regarding a killing upon a sudden quarrel or heat of passion. Instead, the latter instructions make it sufficiently clear that a killing upon a sudden quarrel or heat of passion removes the element of malice aforethought, whereas the instructions applying the felony-murder rule advised the jury that a killing in the perpetration of a felony supplied the element of malice aforethought.

▮ Furthermore, we are in accord with the view of the trial judge that the evidence in this case did not furnish any basis for an instruction respecting a killing upon a sudden quarrel or heat of passion. The defendant contended that the killing was accidental and the testimony produced by him supported only this conclusion. The prosecution contended that the killing was with malice aforethought; resulted from a deliberate act; was attended by circumstances showing an abandoned and malignant heart; and occurred in the commission of a felony. The defendant claims that the prosecution's evidence of prior quarrels supplied the basis for an inference that at the time in question, contrary to his testimony, the killing was not accidental but upon a sudden quarrel or heat of passion. This contention fails to consider the requirement of reasonable provocation as a basis for the sudden quarrel or heat of passion that will reduce the offense of murder to manslaughter. (*People* v. *Gorshen,* 51 Cal.2d 716, 731 [336 P.2d 492]; *People* v. *Danielly,* 33 Cal.2d 362, 377 [202 P.2d 18]; *People* v. *Valentine,* 28 Cal.2d 121, 137 [169 P.2d 1].) There

is no evidence from which an inference of provocation may be drawn. To the contrary, all of the testimony at hand indicates that there was no provocation for any sudden quarrel or heat of passion. ■ When the evidence presents only the alternatives that either the defendant was guilty of murder in the second degree or involuntary manslaughter, or was not guilty, failure to instruct on the issue of voluntary manslaughter is not error. (*People* v. *Mitchell,* 61 Cal.2d 353, 363 [38 Cal.Rptr. 726, 392 P.2d 526]; *People* v. *Lessard,* 58 Cal.2d 447, 452 [25 Cal.Rptr. 78, 375 P.2d 46]; *People* v. *Carmen,* 36 Cal.2d 768, 777 [228 P.2d 281].) Any insufficiency in the instructions on that issue in this case is not a ground for reversal.

■ The defendant also contends that the court erred in its instructions defining assault with a deadly weapon because it omitted any instruction on the issue of general intent. As stated in *People* v. *Carmen, supra,* 36 Cal.2d 768, 775: ''One could not very well 'attempt' or try to 'commit' an injury on the person of another if he had no intent to cause any injury to such other person.'' Under the circumstances of this case, the omission of an instruction on general intent was not prejudicial. (*People* v. *Ford,* 60 Cal.2d 772, 792-793 [36 Cal.Rptr. 620, 388 P.2d 892]; *People* v. *Carmen, supra,* 36 Cal.2d 768, 775.)

In his reply brief the defendant admits that the alleged error in admitting evidence of statements made by the victim that she was fearful he might injure her was not prejudicial, which is a conclusion to which we ascribe. For this reason no further consideration need be given to the contention respecting such.

■ Under the exclusionary rule announced in *People* v. *Dorado, supra,* 62 Cal.2d 338, it is error to admit into evidence incriminating statements made by a defendant in response to interrogation by a law enforcement officer after onset of the accusatory stage in the course of a criminal investigation unless in making such incriminating statements the defendant has knowingly and intelligently waived his constitutionally guaranteed rights to counsel and to remain silent. ■ Under the rule, a finding of waiver may not be made except upon proof that preliminary to such interrogation the defendant was informed by the officer of these rights or that he otherwise had a conscious knowledge of them. The accusatory stage exists when the investigation is focused on an accused and the purpose of the interrogation in the course

thereof is to elicit a confession. (*Escobedo* v. *Illinois*, 378 U.S. 478, 492 [84 S.Ct. 1758, 1766, 12 L.Ed.2d 977, 986]; *People* v. *Stewart*, 62 Cal.2d 571, 577-578 [43 Cal.Rptr. 201, 400 P.2d 97].) ▆ Stated otherwise, the investigation is in the accusatory stage when it focuses upon the accused and involves "a process of interrogations that lends itself to eliciting incriminating statements." (*Escobedo* v. *Illinois, supra,* 378 U.S. 478, 491 [84 S.Ct. 1758, 1765, 12 L.Ed.2d 977. 986]; *People* v. *Stewart, supra,* 62 Cal.2d 571, 577-579.) ▆ In determining whether the police were carrying out a process of interrogations that lent itself to eliciting incriminating statements, the total situation which enveloped the questioning must be analyzed "by considering such factors as the length of the interrogation, the place and time of the interrogation, the nature of the questions, the conduct of the police and all other relevant circumstances." (*People* v. *Stewart, supra,* 62 Cal.2d 571, 579.)

The decision in *People* v. *Dorado, supra,* 62 Cal.2d 338, in addition to announcing the aforesaid exclusionary rule, held that admission of an excludable confession *per se* was prejudicial error, but indicated that under some circumstances the admission of incriminating statements other than a confession may constitute harmless error. (*People* v. *Dorado, supra,* 62 Cal.2d 338, 356.)

▆ Clearly, the statement by defendant to his landlord that he "shot Bobbie. She grabbed the gun" is not within the *Dorado* rule.

▆ The statements made to the officers on the way to the police station followed the defendant's arrest for killing Barbara Miller and, although there is no indication that at this time the officers knew whether the killing was murder or manslaughter, the investigation into whatever offense had been committed was focused upon the defendant as the accused. This conclusion leaves for determination the question whether the statements made to the officers by defendant on his way to the police station were made in response to a process of interrogation by them that lent itself to eliciting incriminating statements from him. (*People* v. *Stewart, supra,* 62 Cal.2d 571, 578-579.) The trip to the station consumed between 10 and 15 minutes. The defendant was in custody of two officers in a police car. As testified to by the officers, the interrogation was initiated by an inquiry as to "what happened in regard to the shooting," to which the defendant replied, "he didn't mean to do it . . . he had the gun in his hand and

it went off''; later, in the course of further questioning ''on these same lines'' he stated that the deceased ''had been holding the gun and it had just gone off,'' and on one occasion said she had the gun in her left hand; in a further and subsequent statement which, in a measure, may be interpreted as an amplification of the first, the defendant said that ''the gun was in his hand and that Bobbie [the deceased] had grabbed the gun and it had gone off at that time.'' These statements did not follow consecutively; were made at different times on the way to the police station; and were interspersed with responses to inquiries respecting other pertinent facts, momentary periods of silence, and defendant's discussion regarding other matters, such as an expression of his concern for the children and laudatory remarks concerning himself. Each of the statements describing the manner of the shooting were exculpatory rather than incriminatory. Even the statements containing defendant's admission that he held the gun included the exculpatory assertions that it went off, indicating he did not fire the gun, and that ''he didn't mean to do it,'' indicating he had no intention to shoot. The fact that the process of interrogation elicited not only the initial statement that the defendant held the gun, but also the subsequent statements that the victim grabbed it when it went off, and that, contradictorily, she held the gun when it went off, would seem to indicate that the process of interrogation was not carried on for the purpose of obtaining a confession to an unlawful killing. It does not appear that the officers asked the defendant to explain his statement to the landlord that he shot the victim; sought to ascertain the reason for the condition of the room in which the shooting occurred, which supports inferences that a struggle preceded the killing; or otherwise strove to elicit statements that would be incriminating. Whether, under the rule heretofore noted and the facts aforesaid, the conversation between the officers and the defendant while on their way to the police station constituted a process of interrogation that lent itself to eliciting incriminating statements is problematical. On the other hand, the interrogation after arrival at the police station was conducted under entirely different surroundings. At this time the defendant's statements were made in response to what appeared to be a question and answer process of interrogation conducted by an officer other than one of those making the arrest, in a room in the station, and in the presence of another officer and a third person, presumably a stenographer who was reporting the

proceedings. Among other things he then said that when the gun went off he was sitting across the room from the victim and prior thereto had said nothing to her. These statements were received in rebuttal of the defendant's testimony that prior to the shooting he had asked the victim what she was doing with the gun, and that immediately before it went off he stood up, went across the room, and grabbed her arm. The process of interrogation during which these statements were made was one that lent itself to eliciting incriminating statements. However, for the purpose of this decision, we will assume that the interrogation occurring on the way to the police station as well as that occurring thereafter were held during the accusatory period of the investigation, as we have concluded that any error in the admission of the statements made during either of these interrogations does not justify a reversal.

The statements made on the way to the police station were admitted as part of the prosecution's case in chief. The statement that the gun was in the defendant's hand and went off, or the supplement thereto that the gun was in his hand, Bobbie grabbed it and it went off, were repetitions of what he already had told his landlord. Exclusion of the former would have been inconsequential as any inference of guilt deducible therefrom was equally deducible from the latter, which was not excludable.

The effect of the contradictory versions of the shooting asserted in the statements both before and after arriving at the police station, as the basis for an inference of consciousness of guilt, is similar to the effect of the conflict between the versions in some of those statements and in the defendant's testimony as a basis for impeaching his credibility as a witness. His credibility was attacked by evidence contradicting his testimony in other particulars than those to which the subject statements were directed. The prosecution's case in chief, contrary to the defendant's version of the shooting, established that he had struggled with the victim before the shooting; had assaulted her; had threatened her life on previous occasions; and, as stated to the landlord, had shot her when she grabbed the gun. He denied all of these facts. When the evidence is considered as a whole, the effect of the conflicts in the defendant's statement to the police upon the issue of his credibility or as a basis for drawing an inference of consciousness of guilt, in view of other evidence establishing such conflicts, is relatively insignificant. (See *People* v. *Burke,* 61 Cal.2d

575, 580 [39 Cal.Rptr. 531, 394 P.2d 67] ; *People* v. *Parham,* 60 Cal.2d 378, 385 [33 Cal.Rptr. 497, 384 P.2d 1001].)

In *People* v. *Dorado, supra,* 62 Cal.2d 338, the court said that under some circumstances the erroneous introduction of incriminating admissions may be harmless. This statement is a part of the general rule therein announced (*People* v. *Hillery,* 62 Cal.2d 692 [44 Cal.Rptr. 30, 401 P.2d 382]), the application of which to specific circumstances should be made in light of the reason for the rule.

The exclusionary rule announced in *People* v. *Dorado, supra,* 62 Cal.2d 338, appears to be the product of dual considerations, *viz,* (1) a court-declared need to sterilize the interrogation room against any inclination to elicit incriminating information from an accused by coercive means; and (2) to protect an accused against denial of his constitutionally guaranteed rights to counsel and not to incriminate himself by police interrogation eliciting incriminating statements during that stage of a criminal investigation within the protective scope of the constitutional guarantee. These considerations were interrelated in resolving the purpose of the adopted rule which is to discourage the practice of obtaining incriminatory statements from an accused under circumstances lending itself to oppressive practices, and to benefit "the overall system of criminal administration by drying up the sources of coercion." (*In re Lopez,* 62 Cal.2d 368, 377, 382 [42 Cal.Rptr. 188, 398 P.2d 380] ; *Escobedo* v. *Illinois, supra,* 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977].) In determining whether a violation of the exclusionary rule is harmful, attention should be given the interrelated effect of the considerations motivating its adoption as disclosed by its announced purpose. ▮ Obtaining incriminating statements through coercive methods or in violation of the right to counsel or to remain silent constitutes a denial of due process and an invasion of constitutionally guaranteed rights. The defendant contends that, for this reason, the admission of such statements in evidence requires a reversal. ▮ However, not every denial of due process of law or every denial of constitutionally guaranteed rights occurring as an incident in the course of a criminal proceeding contaminates the fairness of that proceeding in toto. (*People* v. *Parham, supra,* 60 Cal.2d 378, 385 ; *People* v. *Tarantino,* 45 Cal.2d 590, 596 [290 P.2d 505] ; *People* v. *O'Bryan,* 165 Cal. 55, 60-67 [130 P. 1042] ; *People* v. *Montgomery,* 47 Cal.App.2d 1, 20 [117 P.2d 437] ; generally see concurring and dissenting opinion of

Peters, J. in *People* v. *Modesto,* 62 Cal.2d 436, 460-464 [42 Cal.Rptr. 417, 398 P.2d 753].) It is only in those instances where the nature of the denial is such as to infect the whole proceeding that a conviction therein must be set aside. In the instant case none of the defendant's allegedly inadmissible incriminating statements were the product of oppressive conduct. This is not a situation where, by virtue of the circumstances under which the statements were made, or the probative force of those statements in relation to the total evidence, the denial of due process or of constitutionally guaranteed rights incident to their making and admission into evidence infected the whole proceeding, and requires a reversal. We conclude that the error in question comes within the purview described as harmless, and is subject to the rule on appeal prescribed by article VI, section 4½ of the California Constitution. We have reviewed the whole record, including the evidence, and conclude therefrom it is not probable that a different verdict would have been rendered if the error complained of had not occurred. Under these circumstances this error is not ground for reversal. (*People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243].)

The judgment is affirmed.

Brown (Gerald), P. J., and Finley, J. pro tem.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 14, 1965. Mosk, J., did not participate therein.

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.