[Crim. No. 10867.   Second Dist., Div. Four.   Jan. 19, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. GILBERT JOSEPH VALDEZ, Defendant and Appellant.

David C. Marcus for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and David S. Sperber, Deputy Attorney General, for Plaintiff and Respondent.

FILES, P. J.—Defendant was convicted of possession of marijuana in·violation of Health and Safety Code section 11530. By stipulation the case was submitted to the court upon the transcript of the preliminary examination and the testimony of the defendant. This appeal is from the judgment.

## I. *Evidence*

The evidence tending to support the judgment will be stated in accordance with the established rule of appellate review. (*People* v. *Hills,* 30 Cal.2d 694, 700 [185 P.2d 11].)

Deputy Sheriffs Barlow and Secor first observed defendant on July 27, 1964, at approximately 4:30 or 5 p.m. He was seated in his automobile which was stopped in the middle of Eastern Avenue, 8 or 10 feet from the right-hand curb, and he was changing his shirt. Traffic was backed up for half a block. When the signal changed for the second time, the deputies drove alongside defendant's car and told him to move it out of the street. Defendant remained in the same location, however, and continued to remove his shirt.

The deputies proceeded to the intersection and drove into a gas station. Defendant then drove his car into the same gas station, stopping at a pole with a water line and air hose. The deputies approached defendant and asked him for his driver's license. He replied that he didn't have one. They next asked him for the registration of his car, and he said that he didn't have that either. He stated that the car belonged to his father, that it had become overheated and he had stopped in the middle of the street to wait for it to cool off, and that he had been taking his shirt off so he could work on the car and fix it. Defendant was then asked to step over to the patrol car. Deputy Secor began to write a citation

while Deputy Barlow called headquarters by radio for a record check. Defendant then started to walk away. Secor called him back, patted him down for weapons and asked him to sit in the rear of the patrol car. Defendant complied.

While defendant was sitting in the patrol car Deputy Barlow, who was in the front seat, noted that "his hand was making noise such as paper, wadding paper up." Barlow asked defendant what he had in his hand and defendant replied " 'Nothing.' " At that point Barlow turned around and said to defendant "I want to see what you have in your hand." Defendant opened his hand and started to move it towards his mouth. Barlow observed a red capsule and some tinfoil in the hand. He reached back and grabbed defendant's hand. Defendant began fighting, biting, kicking and scratching. Deputy Secor told defendant he was under arrest, but defendant continued to fight. Eventually defendant was subdued, with the aid of two other officers who were called to the scene by a spectator. Deputy Secor then removed the substance from defendant's hand which, upon examination, proved to be a partially smoked marijuana cigarette and two red capsules which contained secobarbital.

During the struggle defendant sustained a cut over his left eye and so was taken to the county hospital. The next morning Deputy Guenther, assigned to the narcotics detail, had a conversation with defendant there. Defendant was asked if he knew what was in the packages the officers had taken from him and he stated " 'Yes, there were some reds and some pot.' " He admitted that he smoked marijuana and when asked whether the items found on him were his, he replied, " 'Yes. Why do you think I tried to swallow them?' " Defendant stated that he attempted to swallow them because he was afraid he would be sent back for violation of probation or parole. Deputy Guenther testified that the defendant's statements were freely and voluntarily made.

At the trial defendant denied that he ever opened his hand prior to or during the struggle with the deputies in the radio car, but did admit that he was trying to put something in his mouth before Barlow took hold of his hand. He did not deny that the marijuana had been found in his hand, nor did he deny that he knew the nature of the substance.

## II. *Legality of the Arrest and Seizure*

The defense relied upon by defendant in the trial court was that the marijuana was not admissible in evidence

because its discovery and seizure by the deputy sheriffs was illegal. This calls for an analysis of the events leading to the seizure.

When defendant was first seen in his automobile standing in the middle of Eastern Avenue during the rush hour he may have been in need of assistance or he may have been violating Vehicle Code section 22502, depending upon circumstances which the deputies were entitled to investigate. (We note, however, that while defendant was in the street the deputies did not ask him to do anything except move on. They did not direct him into the service station.) When they learned that defendant carried no operator's license, and that his vehicle displayed no registration certificate, they had reason to believe he had been, in their presence, violating Vehicle Code sections 4454 and 12500 or 12951. The deputies were authorized to arrest defendant for these offenses (Pen. Code, § 836, subd. 1) and to detain him at least until he had furnished satisfactory evidence of his identity and had signed a promise to appear. (Veh. Code, §§ 40302, 40504.)

Moreover, in finding defendant without either an operator's license or a registration certificate, the deputies were bound to consider whether or not he was in possession of a vehicle which had been stolen or taken without the consent of the owner. The possibility that defendant might be guilty of one of these felony offenses was a circumstance bearing upon the kind of investigation which was pertinent and reasonable at that time. When defendant started to walk away, it was certainly not improper for the deputies to request him to sit in the patrol car while they prepared the citation and called headquarters for a record check.

While defendant was seated in the patrol car he was under arrest, within the meaning of Penal Code section 834 and Vehicle Code sections 40300 et seq. (Cf. *In re Emmett,* 120 Cal.App. 349, 353 [7 P.2d 1096].) A person under arrest does not enjoy the same liberty and the same privacy as other persons. For example, the fact that a lawful arrest has been made justifies a reasonable search of defendant's person and the immediate premises as an incident to the arrest. (*People* v. *Parham,* 60 Cal.2d 378, 383 [33 Cal.Rptr. 497, 384 P.2d 1001].)

Under the circumstances of this case it was proper for Deputy Barlow to insist on knowing what the arrested man held in his hand as he sat in the patrol car. A closed fist may

conceal a weapon, contraband, or evidence of an offense which is under investigation. The sound of crumpling paper in defendant's hand suggested the concealment of a document which might betray the true identity of defendant or the ownership of the vehicle. Peace officers are well aware that red capsules often contain a barbiturate (possession of which is restricted by Bus. & Prof. Code, § 4230) and that persons caught with contraband or other incriminating evidence frequently try to thwart investigation by swallowing the evidence. Here defendant's patently false statement that he had nothing in his hand, and the movement of his arm toward his mouth, called for prompt action by Deputy Barlow to prevent defendant from swallowing whatever he was holding.

There is no suggestion in this record that the deputies choked defendant or committed any other act of brutality of the kind involved in *Rochin* v. *California,* 342 U.S. 165 [72 S.Ct. 205, 96 L.Ed. 183, 25 A.L.R.2d 1396], and *People* v. *Parham,* 60 Cal.2d 378 [33 Cal.Rptr. 497, 384 P.2d 1001]. Officer Barlow simply held defendant's arm to keep his hand away from his mouth. Defendant reacted by fighting, biting, kicking and scratching until he was eventually brought under restraint. The marijuana, which was found in defendant's hand after the fight, was not seized unlawfully.

Neither *People* v. *Brown,* 45 Cal.2d 640 [290 P.2d 528], nor *Gascon* v. *Superior Court,* 169 Cal.App.2d 356 [337 P.2d 201], cited by defendant, supports defendant's position here. In each of those cases the contraband was taken from the person of the defendant illegally because at the time the police accosted the defendant they had no cause to make an arrest or even any reason for suspicion. The seizures were not justified by what was known or reasonably suspected by the officers at the time. Our recent decision in *People* v. *Garrett,* 237 Cal.App.2d 701 [47 Cal.Rptr. 194], falls in the same category with *Brown* and *Gascon* because the court was required to disregard the information which the officers had relied upon as a justification for stopping the defendant.

In the case at bench, when Deputy Barlow asked defendant what he held in his hand the relationship between them was quite different from the relationship between an officer and a citizen whom he meets casually in a public place. Defendant was under arrest, seated in a police vehicle, concealing something in his fist.

It was these circumstances which called for inquiry, and which justified further measures when defendant attempted to swallow the object.

### III. *Sufficiency of the Evidence*

As defendant's counsel interprets the testimony of the two deputies there was some conflict between them. His argument, based upon this supposed conflict, requires no discussion here. It was for the trial court to determine whether and to what extent the testimony was reliable, and its determination, based upon substantial evidence, must be accepted here. (*People* v. *Hills,* 30 Cal.2d 694, 701 [185 P.2d 11].) This rule applies even when there is a conflict between two witnesses called by the prosecution. (*People* v. *Hutcherson,* 197 Cal.App.2d 771, 779 [17 Cal.Rptr. 636].)

### IV. *Defendant's Confession*

Under the rules announced in *Escobedo* v. *Illinois,* 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977], and *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], defendant's statements to Deputy Guenther were not admissible in evidence unless defendant had been advised of his right to silence and to the aid of counsel. The interrogation took place on July 27, 1964, which was prior to any decision in the *Dorado* case. In the absence of any evidence on the subject we may not assume that such advice was given as a part of an interrogation conducted at that time. (*People* v. *Stewart,* 62 Cal.2d 571, 580 [43 Cal.Rptr. 201, 400 P.2d 97].) If defendant had objected on this ground to the use of his statements at the trial, his objections should have been sustained. The record shows that the only objection to Deputy Guenther's testimony was the following statement at the preliminary examination when Guenther was on the witness stand: "At t'is time, if the Court please, we will object to the introduction of this evidence on the grounds that the arrest of the defendant was illegal. The search of his person was unlawful and not justified by any reasonable or probable cause to make such a search."

Counsel then argued vigorously his contention that the arrest and search had been unlawful, but he did not mention the *Escobedo* rule or suggest that his client had not been warned before talking with the deputy.

At the trial the People's case was, by stipulation, submitted on the record of the preliminary examination, "subject to

such objections as have been or may be interposed." No further objection to Deputy Guenther's testimony was interposed.

In this court, where defendant is represented by other counsel, he contends for the first time that his statements to Deputy Guenther should have been excluded because he presumably had not been warned. We are therefore required to determine whether, under the circumstances of this case, defendant is entitled to reversal because of the admission of evidence which could have been excluded had he raised the objection which he urges here. ▮ The general rule is that the admissibility of evidence will not be reviewed on appeal in the absence of a proper objection at the trial. (Pen. Code, § 1259; *People* v. *Robinson,* 62 Cal.2d 889, 894 [44 Cal.Rptr. 762, 402 P.2d 834]; *People* v. *Merkouris,* 46 Cal.2d 540, 558 [297 P.2d 999].) However, in *People* v. *Hillery,* 62 Cal.2d 692, 712 [44 Cal.Rptr. 30, 401 P.2d 382], the Supreme Court pointed out that an objection based upon the *Escobedo-Dorado* doctrine would have been futile in a case tried prior to the *Escobedo* decision, because this ground of exclusion was unknown to the bar and the trial courts at that time. Thus in cases tried before the *Escobedo* opinion came down the defendant has the benefit of the new rule on appeal even though he made no objection in the trial court.

*Escobedo* v. *Illinois,* 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977], was decided June 22, 1964. The first opinion in *People* v. *Dorado* (Cal.) 40 Cal.Rptr. 264, 394 P.2d 952, announcing the California Supreme Court's conclusion that the *Escobedo* rule applied even when the defendant did not request counsel, came down on August 31, 1964. The final opinion in that case (62 Cal.2d 338) was filed January 29, 1965.

▮ In the case at bench the preliminary examination was held on August 4, 1964. The trial was conducted on October 30, 1964, and the motion for a new trial was argued and denied on December 8, 1964. Before this case was tried the *Escobedo* rule, and the California Supreme Court's interpretation of it in the first *Dorado* opinion, had become the subject of widespread comment, both within the profession and among the general public. We cannot doubt that the able and experienced lawyer who represented defendant in the trial court was aware of this.

The record shows that counsel argued vigorously, both at the trial and on the motion for new trial, that the arrest and

the seizure of the marijuana were illegal acts. But on neither occasion did he challenge the admissibility of defendant's statements under the *Escobedo-Dorado* rule.

The record before us explains the tactics which counsel adopted. If he could have obtained a ruling that the marijuana had been seized illegally, the People could not have made a prima facie case and defendant would have been acquitted. If defendant had objected to the testimony of Deputy Guenther, the testimony might have been excluded, but defendant would have been convicted without it. Defense counsel recognized, as anyone must, that the defendant had no chance of acquittal if the half-smoked cigarette was received in evidence, and that it made not the slightest difference whether the confession came in. Counsel was simply following the advice commonly given by experienced trial lawyers: "As a rule counsel should object only when failure to do so will result in damage to his client's case." (Cal. Criminal Law Practice (Cont. Ed. Bar) p. 563.)

Our conclusion is that this is not a case in which a defendant should be permitted to raise on appeal an objection which, at the time of trial, competent counsel presumably felt was not worth raising. (*People* v. *Palmer,* 236 Cal.App.2d 645, 650 [46 Cal.Rptr. 449].)

The judgment is affirmed.

Jefferson, J., and Kingsley, J., concurred.