[Crim. No. 18802. First Dist., Div. One. June 12, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
LARRY AUGUSTUS GARDNER, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Harriet Wiss Hirsch, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, William D. Stein and Linda Ludlow, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

GRODIN, J.—Larry A. Gardner appeals from his conviction of first degree murder. Among other arguments, he contends that it was error for the trial court to admit into evidence a confession contained in a letter which he wrote to his attorneys. For the reasons set forth below, we conclude that admission of the confession violated the attorney-client privilege protected by Evidence Code sections 950-954, and that under applicable precedent the error must be regarded as prejudicial. Without reaching appellant's other arguments, therefore, we reverse the conviction subject, of course, to the right of the People to seek a valid conviction at a new trial.

At about 6 p.m. on September 20, 1977, Sing Quon Lum, age 73, was found dead in his apartment at 33 California Street in Salinas, California. His body was on the bed, his head was bloody, his mouth was gagged, and his hands were bound behind his back. Two days later, on September 22, 1977, Detective Andrew Enni of the Salinas Police Department, one of the officers who assisted in the collection of evidence at the scene of the crime, went to Gardner's apartment for investigation of alleged drug activity. While there, he noticed certain physical evidence which, he believed, corresponded to physical evidence he observed in the victim's apartment. Two other persons, Barbara Johnson and Eugene Campbell, were in Gardner's apartment at the time Detective Enni made these observations. The following day, September 23, which was a Friday, Detective Enni returned with a warrant, searched the premises, and arrested all three persons. Gardner and Campbell were placed in adjoining jail cells over the weekend.

On Monday morning, September 26, Detective Claude Sparks of the Salinas Police Department interviewed Campbell, and Campbell told

him that Gardner "had written a statement which would clear Campbell and Barbara Johnson of any involvement" in the crime for which they and Gardner had been arrested. Upon receiving this information, Detective Sparks immediately had appellant removed from his cell and seized from the cell a writing tablet containing the following letter written by Gardner: "To P.D. The only crime Eugene Campbell and Barbara Johnson is guilty of is being in my room at the time the police came. They arrived at 7:30, saw who was in the room and said they were putting a freeze on the room (meaning nobody or nothing could go out nor come in). Then at 11:30 they came back with warrants with the three of our names on it. This crime was committed by me, not us. They had no knowledge of what had taken place two days prior to our arrest. For the interest of justice and to assure them of their human rights, formal charges should not be read against them. I state again, they had no knowledge of the crime that was committed. I think the Salinas Police Department owe these two people (Eugene Campbell and Barbara Johnson) an apology and the Salinas California [*sic*] should print a retraction. I confess. They are innocent. Signed, Larry Gardner (P.S. Now where do we go from here? I wouldn't talk to anybody in the police department until I talked to somebody from your office)." Sparks confronted Gardner with the letter, and Gardner protested that the letter was confidential and intended for his attorney. Appellant moved to suppress the letter on the basis of the lawyer-client privilege;[1] but the motion was denied, and the letter was read to the jury at Gardner's trial.

As codified in Evidence Code section 950 et seq. the lawyer-client privilege, when properly claimed, protects against disclosure of any "confidential communication between client and lawyer," a term defined to include "information transmitted between a client and his lawyer in the course of that relationship and in confidence by a means which, so far as the client is aware, discloses the information to no third persons other than those who are present to further the interest of the

---

[1]Appellant brought his motion under Penal Code section 1538.5. That procedure was inappropriate, since section 1538.5 is a vehicle for asserting only those grounds for exclusion specified therein. Respondent raises no objection to the procedure, however, and we treat appellant's motion as a motion to exclude or strike the evidence (Evid. Code, § 353, subd. (a)).

In addition to the attorney-client privilege, Gardner on appeal asserts the Fourth Amendment to the federal Constitution and Penal Code section 2601, subdivision (b) as barring admission of his statement. These arguments were not asserted in the trial court, and we do not consider them.

client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information ...." (Evid. Code, § 952.)

■ Respondent argues that the privilege does not apply because no lawyer-client relationship existed at the time the letter was seized. It is abundantly clear from the letter itself and from its context that the letter was intended for the office of the local public defender, and that it was written with the (quite reasonable) expectation that Gardner would be represented by that office. Gardner was an indigent criminal accused who, according to records before the trial court on the motion to suppress, had been represented by the Monterey County Public Defender at least seven times prior to his arrest in this case. The letter was addressed "To P.D.," it concluded by requesting advice, and Gardner was in fact represented by the Monterey County Public Defender in this proceeding. In *People* v. *Canfield* (1974) 12 Cal.3d 699 [117 Cal.Rptr. 81, 527 P.2d 633], the privilege was held applicable to the contents of a financial eligibility form which the defendant in that case signed at the jailhouse during a preliminary interview with a legal aide representing the public defender. The court reasoned as follows: "It is clear from the circumstances under which the statement was given that it was given in confidence (see Evid. Code, § 952) and that defendant's purpose was to retain the public defender to represent him in the criminal proceedings against him. Under sections 951 and 954 of the Evidence Code, therefore, any disclosures made by defendant in the course of the interview were privileged and could not be revealed without his consent. [¶] The lawyer-client privilege is, indeed, so extensive that where a person seeks the assistance of an attorney with a view to employing him professionally, any information acquired by the attorney is privileged whether or not actual employment results. [Citation.]" (12 Cal.3d at pp. 704-705.) It is thus apparent that if the contents of the letter which Gardner wrote to the public defender had been communicated in person to a representative of the defender's office, the communication would have been protected by the privilege. The fact that the communication was in the form of an undelivered letter requires, in our view, no different result.

■ Respondent argues in the alternative that Gardner waived any privilege he had with respect to his letter to the public defender by disclosing its contents to Campbell. In this connection we note that a

communication made in the course of an attorney-client relationship is presumed confidential and the opponent of the privilege bears the burden of proof to establish lack of confidentiality. (Evid. Code, § 917; see also *North v. Superior Court* (1972) 8 Cal.3d 301, 310 [104 Cal.Rptr. 833, 502 P.2d 1305, 57 A.L.R.3d 155].) Further, a waiver of confidentiality is not to be assumed lightly: "In considering whether the attorney-client privilege has been waived, we start with the proposition that, as Justice Shinn, concurring, wrote in *People v. Kor* (1954) 129 Cal.App.2d 436, 447 ...: 'The privilege of confidential communication between client and attorney should be regarded as sacred. It is not to be whittled away by means of specious argument that it has been waived. Least of all should the courts seize upon slight and equivocal circumstances as a technical reason for destroying the privilege.' (Quoted with approval in *Sullivan v. Superior Court* (1972) 29 Cal.App.3d 64, 71 ...; *People v. Flores* (1977) 71 Cal.App.3d 559, 565 ....)" (*Lohman v. Superior Court* (1978) 81 Cal.App.3d 90, 94 [146 Cal.Rptr. 171].)

Respondent's waiver argument must be rejected for two reasons. First, it has been held that "it is *not* the content of the communication but the relationship that must be preserved and enhanced as a societal value," and therefore what is required to establish waiver is not simply disclosure of the contents but the fact *"that certain information had been communicated to the attorney."* (*Lohman v. Superior Court, supra*, 81 Cal.App.3d at pp. 96-97; cf. *People v. Morris* (1971) 20 Cal.App.3d 659 [97 Cal.Rptr. 817] [overruled on other grounds in *People v. Duran* (1976) 16 Cal.3d 282, 292 (127 Cal.Rptr. 618, 545 P.2d 1322, 90 A.L.R.3d 1)]; *People v. Garaux* (1973) 34 Cal.App.3d 611 [110 Cal.Rptr. 119].) The only evidence of disclosure by Gardner was Detective Sparks' testimony that Campbell informed him that Gardner had "written a statement which would clear Campbell and Barbara Johnson...." There is absolutely no evidence to indicate that Gardner disclosed to Campbell the fact of his communication to his prospective attorney. But even if there were such evidence, respondent's waiver argument would have to be rejected because Gardner's disclosure (again, according to the testimony of Detective Sparks) was limited to the fact that he had written a statement exonerating Campbell and Johnson, and did not include his own confession of guilt. Obviously there might be grounds upon which one person could exonerate another without himself being guilty of the crime. Thus, even if Gardner's statement to Campbell constituted waiver of Gardner's privilege with respect to the statement of exoneration, the waiver would not extend to the confession. We conclude that Gardner's written confession was protected by the

lawyer-client privilege, that he did not waive that privilege, and that the confession was erroneously admitted into evidence.

■ There remains for consideration the consequences of that error. Normally, as respondent concedes, the erroneous admission of a confession is considered prejudicial per se within the meaning of article VI, section 13 of the state Constitution. (See *People* v. *Schader* (1965) 62 Cal.2d 716, 728-729 [44 Cal.Rptr. 193, 401 P.2d 665]; *People* v. *McClary* (1977) 20 Cal.3d 218, 230 [142 Cal.Rptr. 163, 571 P.2d 620].) Respondent argues, however, that this general rule applies only where a constitutional right has been violated, and that the prejudicial effect of violating the lawyer-client privilege should be tested by the lesser standard of *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243], i.e., whether it is reasonably probable that the jury would have reached a verdict more favorable to the defendant had his statement not been received in evidence.

Gardner argues vigorously that the Sixth Amendment right to counsel is implicated whenever a criminal defendant's confidential relationship with his attorney is violated, and points to *Barber* v. *Municipal Court* (1979) 24 Cal.3d 742, 752 [157 Cal.Rptr. 658, 598 P.2d 818], for the proposition that "[t]he right to counsel...embodies the right to private consultation with counsel." (See also *Fisher* v. *United States* (1976) 425 U.S. 391, 403 [48 L.Ed.2d 39, 51-52, 96 S.Ct. 1569]; *United States* v. *Peters* (S.D.Fla. 1979) 468 F.Supp. 364, 368; *State* v. *Kociolek* (1957) 23 N.J. 400 [129 A.2d 417]; *People* v. *Belge* (1975) 83 Misc.2d 186 [372 N.Y.S.2d 798], affd. 50 App.Div.2d 1088 [376 N.Y.S.2d 771], affd. 41 N.Y.2d 60 [390 N.Y.S.2d 867, 359 N.E. 2d 377].) Respondent responds with equal vigor that the Sixth Amendment right to counsel applies only "'at or after the time that adversary judicial proceedings have been initiated'" (*People* v. *Duck Wong* (1976) 18 Cal.3d 178, 187 [133 Cal.Rptr. 511, 555 P.2d 297]) and argues that application of the *Barber* principle to Gardner would involve "an unprecedented extension of the Sixth Amendment guarantee." We find it unnecessary to resolve that argument, however. Assuming arguendo that the lawyer-client privilege constitutes the sole ground for error in admitting Gardner's letter, and accepting that *Watson* supplies the standard generally applicable for assessing the prejudicial effect of evidence admitted in violation of that privilege (see *People* v. *Canfield, supra,* 12 Cal.3d 699, 707), the narrower question presented here is whether that test or the per se rule ought to be applied where it is a

*confession* that is erroneously admitted.[2] The answer to that question turns upon the basis of the per se rule and is found, at least for purposes of this state's jurisprudence, in *People v. Schader, supra*, 62 Cal.2d 716. The question in that case was whether the erroneous admission of a confession obtained in violation of defendant's right to counsel required reversal per se. The United States Supreme Court had held that the introduction of an *involuntary* confession automatically requires reversal, explaining that if "a coerced confession constitutes a part of the evidence before the jury and a general verdict is returned, no one can say what credit and weight the jury gave to the confession. And in these circumstances this Court has uniformly held that even though there may have been sufficient evidence, apart from the coerced confession, to support the judgment of conviction, the admission in evidence, over objection, of the coerced confession vitiates the judgment because it violates the Due Process Clause of the Fourteenth Amendment." (*Payne v. Arkansas* (1958) 356 U.S. 560, 568 [2 L.Ed.2d 975, 981, 78 S.Ct. 844].) And the California Supreme Court had previously stated in *People v. Parham* (1963) 60 Cal.2d 378, 385 [33 Cal.Rptr. 497, 384 P.2d 1001], that "a confession will constitute persuasive evidence of guilt, and it is therefore usually extremely difficult to determine what part it played in securing the conviction. [Citations.] These considerations justify treating involuntary confessions as a class by themselves and refusing to inquire whether in rare cases their admission in evidence had no bearing on the result." The Supreme Court in *Schader*, noting this rationale for the per se rule, stated: "In determining the prejudicial effect of the illegally obtained confession at trial we are not concerned with the nature of the error that caused the illegality. The *reason* that the confession should not have been introduced into evidence is no longer material. As to its impact upon the jury and the prejudicial effect, the confession obtained in violation of defendant's right to counsel cannot be distinguished from the confession obtained in violation of defendant's right to be free of coercion. [¶] In this inquiry we cannot logically distinguish between the different bases for the exclusion of the confession.... After holding that the confession should not have been admitted, we can only be concerned with the effect of the confession upon the jury's deliberation, regardless of the type of error involved. It is because of the effect of the confession that the reversal is compelled." (*People v. Schader, supra*, 62 Cal.2d at pp. 729-730.)

---

[2]Respondent agrees with appellant that a reasonable inference from the record is that appellant was aware of the charge against him, and that the substance of the seized letter constitutes a confession.

We can conceive of no difference *in effect* upon a jury between a confession admitted in violation of some constitutional principle and a confession admitted in violation of the lawyer-client privilege. Under the reasoning in *Schader*, the same test of prejudice must be applied to both.

As a last effort to save the conviction, respondent invokes *People* v. *Jacobson* (1965) 63 Cal.2d 319 [46 Cal.Rptr. 515, 405 P.2d 555], in which the defendant made approximately 10 separate admissions or confessions, of which the last 2, made at the police station during and after booking, were objectionable because of the absence of *Miranda* warnings. Noting that no undue emphasis was placed on any of the confessions at defendant's trial, that each person who had witnessed defendant make an incriminating statement testified as to what he had heard, that no one confession contained details significantly different from the others, and that the sequence of confessions precluded the possibility that the legally obtained confessions were "induced" by those subsequently improperly obtained, the court concluded that Jacobson's was a "rare case" in which it could be said that there was no reasonable possibility that the evidence complained of might have contributed to the conviction. (63 Cal.2d at pp. 330-331.) This exception was also applied in *People v. Cotter* (1965) 63 Cal.2d 386 [46 Cal.Rptr. 622, 405 P.2d 862], in which the defendant gave seven statements, four of which were admissible and three of which were not.

Respondent contends the *Jacobson-Cotter* exception to the per se rule is applicable on the basis of the following facts. While awaiting trial, Gardner was moved from the old Monterey jail to a new facility. His cellmate at the new location, David Amaya, testified at trial that Gardner admitted he had indeed killed the victim, with the aid of Eugene Campbell and another person, and that he had described in some detail how the deed was done. Respondent suggests that the key to the *Jacobson-Cotter* exception is not the number of confessions, but whether the improperly obtained statement was "cumulative," and whether the legally obtained confession was induced by the improperly obtained confession. Urging that in the instant case the answer to the first question is "yes" and to the second "no," respondent argues that the exception should be applied.

As Gardner points out, however, the erroneously admitted confession was in the defendant's own handwriting, and admitted to be his, where-

as the other confession was oral, and the jury was specifically instructed to view it with caution. Gardner's attorney attempted at trial to impeach Amaya by evidence that he came forward with his information concerning Gardner only when he thought it would be of assistance to him in having certain charges against him dismissed, and it is of course difficult to determine from a cold record what the jury might have concluded with respect to Amaya's credibility. Gardner testified on his own behalf; he admitted robbing, hitting, and tying the victim, but denied planning to kill him or killing him. Gardner's written statement was characterized by him and by the district attorney at trial as constituting a confession to Mr. Lum's murder, and Gardner sought to explain it by saying that at the time he wrote it he believed he may have killed the victim but upon reflection decided he had not done so. The alleged oral confession differs from the written confession with respect to Campbell's participation. The district attorney relied heavily upon the written confession in his opening statement, it was read verbatim to the jury, and in his closing arguments the district attorney argued "...the most important statement that you have, the one there is just no way to dispute, is to take the statement the defendant himself wrote out, apparently for his attorney." For all these reasons, we cannot in good conscience say that the written confession was "merely cumulative" within the meaning of the *Jacobson-Cotter* exception to the per se rule. Applicable precedent requires that we reverse on the basis of the error in admitting the confession. We do not reach, therefore, the other issues which Gardner raises in his appeal.

Judgment reversed.

Racanelli, P. J., and Elkington, J., concurred.