Filed 7/31/15; Supreme Ct. pub. order 3/17/16 (see end of opn.) (originally published at 239 Cal.App.4th 33)
**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| NEWARK UNIFIED SCHOOL DISTRICT,<br><br>      Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF ALAMEDA COUNTY,<br><br>      Respondent;<br><br>ELIZABETH BRAZIL,<br><br>      Real Party in Interest. | A142963<br><br>(Alameda County<br>Super. Ct. No. RG14738281) |

Current and former real parties in interest Jennifer Snyder, Elizabeth Brazil, Newark Advocates for Change, and Newark Citizens for Change requested documents under the California Public Records Act (Gov. Code,[1] § 6250 et seq.; PRA) from petitioner Newark Unified School District (District). When the District delivered documents in response to the requests, it inadvertently included over a hundred documents that, the District contends, are subject to the attorney-client or attorney work product privileges. Within hours of the release, the District's interim superintendent discovered the error and sent e-mails to the recipients asking for return of the documents. Snyder and Brazil refused. Snyder, an attorney, cited section 6254.5 in contending the District's inadvertent release had waived the privileges. Under that statute, the disclosure of a document to the public waives any claim by an agency that the document is exempt from release under the PRA.

---

[1] All statutory references are to the Government Code unless otherwise indicated.

The District filed an action against real parties seeking return or destruction of the privileged documents. The trial court initially granted a temporary restraining order preventing their dissemination, but it ultimately agreed with real parties, holding that section 6254.5 effected a waiver of any claim of confidentiality with respect to the privileged documents. Before the temporary restraining order expired, the District filed a petition for a writ of mandate in this court. We continued the restraining order and issued an order to show cause.

We now reverse. We conclude the language of section 6254.5 is reasonably susceptible to the meanings urged by both parties and examine the legislative history of the statute. That history demonstrates conclusively the Legislature's intent in enacting section 6254.5 was to prevent public agencies from disclosing documents to some members of the public while asserting confidentiality as to other persons. Waiver as a result of an inadvertent release, while not necessarily inconsistent with the Legislature's intent, was not within its contemplation. In order to harmonize section 6254.5 with Evidence Code section 912, which has been construed not to effect a waiver of the attorney-client and work product privileges from an inadvertent disclosure, we construe section 6254.5 not to apply to an inadvertent release of privileged documents.

## I. BACKGROUND

The District filed a complaint for injunctive relief (complaint) against real parties in August 2014. The complaint alleges Snyder is an attorney who represents the two entity real parties, community organizations, while Brazil is a Newark resident. In June 2014, real parties made one or more requests to the District under the PRA. In August, the District released documents in response to the requests. Soon after, the District realized not all of the documents had been reviewed for privilege or other exemptions and sent an e-mail to the recipients requesting their return. Brazil and Snyder declined to comply, Snyder taking the position the District had waived any applicable privileges by releasing the documents. The complaint seeks injunctive relief requiring the return or destruction of the privileged, exempt, or confidential records that had been released.

2

Promptly after filing the complaint, the District sought a temporary restraining order (TRO) to prevent further disbursement of the documents and an order to show cause regarding a preliminary injunction. The application was supported by a declaration from the interim superintendent of the District, Timothy Erwin, explaining the circumstances. According to Erwin, the District began retrieving and reviewing the documents requested by real parties upon receiving the PRA requests in June. On August 20, the District received an e-mail from Snyder threatening legal action if the documents were not produced in two days' time. Thinking the review had been completed, Erwin agreed to meet Snyder's deadline by downloading the responsive documents onto a thumb-drive she was to supply. On the afternoon of August 22, the download occurred as agreed. In addition, the District "released to others four CD's and three hard copy sets."

Later that day, Erwin "became aware that several hundreds of pages" of the downloaded documents "had not yet been reviewed for exemption, privilege and/or confidentiality, including attorney-client privileged communications" and had been "inadvertently produced." At 7:15 p.m. that night, Erwin sent an e-mail to all persons listed on the PRA requests as seeking the documents, including Snyder and Brazil, informing them of the inadvertent production. The e-mail requested the recipients refrain from reviewing the documents and return them to the District. Snyder initially responded with an e-mail stating she had deleted the documents and encouraging others to do the same. Brazil, however, refused to comply. Soon thereafter, Snyder took the same position, contending the release of the documents had waived any privilege by operation of section 6254.5, which states the "disclosure" of a public record "to any member of the public" constitutes a waiver of otherwise applicable exemptions from disclosure.

In response to the District's request for a TRO, Snyder submitted an unsworn opposition. According to the opposition, the PRA requests sought information about the resignation of Erwin's predecessor, Dave Marken. Some members of the community believed the District's governing board had not properly explained the circumstances

3

surrounding his resignation and its rejection of Marken's subsequent attempt to rescind the resignation.

Upon receiving the downloaded documents, Snyder's opposition stated, she created an online folder for sharing the documents with her clients. After receiving a message regarding the inadvertent production, and prior to having reviewed the documents herself, Snyder deleted the online folder. After conducting legal research, however, she concluded the District's production constituted a waiver of any applicable privileges under section 6254.5, and she recreated the online folder.

The unsworn opposition argued the requested orders should be denied in part because "[t]he records have already been viewed by hundreds of parents and the Alameda County District Attorney," but this claim was not supported by evidence. With respect to this issue, the evidentiary material supporting the opposition, a declaration by Snyder with attached documents, stated only, "at least 10 parents pick [*sic*] up the public records request on Friday from the district."[2] As recognized by the trial court, the documentary material attached to her declaration contained evidence of the documents' review by only one person.

The trial court initially refused the District's application for an order show cause, concluding any applicable privileges had been waived by the documents' release under section 6254.5. It nonetheless issued a restraining order temporarily precluding further dissemination of the documents. The order granted the District six days to review the released documents and identify all those as to which it sought to claim the attorney-client and attorney work product privileges. Pending the District's review and production of a privilege log, real parties "and all persons acting in concert with" them were restrained from reviewing or disseminating the released documents. Upon expiration of

---

[2] Snyder's declaration stated in full: "1. I am an attorney at law duly admitted to practice before all the courts of the State of California and the attorney of record herein for Plaintiff [*sic*] Newark Advocates for Change. [¶] 2. I have received the attached emails and documents directly from my clients. [¶] 3. Based on information and belief, at least 10 parents pick [*sic*] up the public records request on Friday from the District."

4

the time for production of the privilege log, the restraining order expired by its own terms as to all documents not listed on the log. One week later, on September 9, the restraining order was to expire as to all documents unless a further order of court had been entered. The District thereafter produced a privilege log identifying well over a hundred of the released documents as communications between counsel and District officials or as discussing such communications.

On September 9, 2014, the trial court issued an amended order denying the request for a temporary restraining order. The amended order reaffirmed the court's legal conclusions and rejected the District's claim of irreparable harm, concluding public disclosure of the documents had already occurred because "the information has been released to several members of the public through posting in [an online] folder and people picking up CDs at the office of the School Board." Despite this rejection, the court continued the TRO for an additional week with respect to the documents on the privilege log.

Prior to expiration of the TRO, the District filed a petition for a writ of mandate in this court seeking a stay of the trial court's order permitting the review and release of the documents listed on the privilege log and the issuance of a writ directing the return of the documents. We granted the requested stay by continuing the order precluding the real parties' review and dissemination of the privileged documents. After receipt of the parties' informal briefing, we issued an order to show cause why the writ should not be granted. We have received submissions by two groups of amici curiae, both consisting of media-related persons and entities.

During the pendency of this proceeding, the District requested dismissal of the writ petition against Snyder and the two entity real parties, and we granted the request. As a result, Brazil is the only remaining real party.

## II. DISCUSSION

The issue squarely presented by the District's petition is whether, by operation of section 6254.5, a public agency's inadvertent release of privileged documents in response to a PRA request waives the otherwise applicable exemption from disclosure based on

5

the attorney-client and attorney work product privileges.[3]  For the reasons discussed below, we conclude such an inadvertent release does not waive the privilege.

## A.  *The California Public Records Act*

"The California Legislature in 1968, recognizing that 'access to information concerning the conduct of the people's business is a fundamental and necessary right of every person in this state' [citation], enacted the California Public Records Act, which grants access to public records held by state and local agencies [citation].  The act broadly defines ' "[p]ublic records" ' as including 'any writing containing information relating to the conduct of the public's business prepared, owned, used, or retained by any state or local agency . . . .' " (*Long Beach Police Officers Assn. v. City of Long Beach* (2014) 59 Cal.4th 59, 66–67.)

Notwithstanding its broad definition of public records, the right of access to such records under the PRA is not absolute.  (*Copley Press, Inc. v. Superior Court* (2006) 39 Cal.4th 1272, 1282.)  The PRA "enumerates a ' "number of exemptions that permit government agencies to refuse to disclose certain public records." [Citation.]' [Citation.] Specific exemptions apply where the public interest in disclosure may be outweighed by various public or private interests." (*Los Angeles Unified School Dist. v. Superior Court* (2014) 228 Cal.App.4th 222, 238.)  In effect, "all public records are subject to disclosure unless the Legislature has expressly provided to the contrary." (*Williams v. Superior Court* (1993) 5 Cal.4th 337, 346.)

"A state or local agency, upon receiving a request by any person for a copy of public records, generally must determine within 10 days whether the request seeks public records in the possession of the agency that are subject to disclosure.  (§ 6253, subd. (c).) If the agency determines that the requested records are not subject to disclosure, for

---

[3] The District originally claimed some of the released documents might have been covered by other PRA exemptions, but the trial court granted a TRO only as to documents covered by the attorney-client and attorney work product privileges.  The District does not appear to have objected to this ruling.  Because documents covered by any other PRA exemptions are presumably now public, our decision addresses only the exemption based on the attorney-client and attorney work product privileges.

example because the records fall within a statutory exemption [citation], the agency promptly must notify the person making the request and provide the reasons for its determination." (*Filarsky v. Superior Court* (2002) 28 Cal.4th 419, 426 (*Filarsky*).)

Section 6254 is one of the statutes specifying documents exempt from release in response to a PRA request. Among them are "[r]ecords, the disclosure of which is exempted or prohibited pursuant to federal or state law, including, but not limited to, provisions of the Evidence Code relating to privilege." (§ 6254, subd. (k); *Sanchez v. County of San Bernardino* (2009) 176 Cal.App.4th 516, 527 [PRA "does not require the disclosure of a document that is subject to the attorney-client privilege"].) The PRA provision of concern here, section 6254.5, states, in relevant part, "Notwithstanding any other provisions of law, whenever a state or local agency discloses a public record which is otherwise exempt from this chapter, to any member of the public, this disclosure shall constitute a waiver of the exemptions specified in Sections 6254, 6254.7, or other similar provisions of law." Although section 6254.5 lists several categories of documents excluded from its waiver rule, privileged documents are not among them. (*Id.*, subds. (a)–(i).) Accordingly, if the inadvertent release of privileged documents in response to a PRA request constitutes a "disclosure" of the privileged documents for purposes of section 6254.5, the release itself effects a waiver of the exemption from disclosure that section 6254, subdivision (k), would otherwise confer.

**B.** *The Meaning of "Disclosure" in Section 6254.5*

Section 6254.5 deems the exemption from release of privileged documents under the PRA to be waived if a privileged document is "disclosed" to a member of the public. Brazil argues the District disclosed the privileged documents by releasing them to Snyder and others, regardless of whether the disclosure was an accident. The District, on the other hand, argues the term "disclosure" requires an intentional act, citing the law of waiver and the legislative history of section 6254.5. An inadvertent release of documents, it argues, is outside the scope of the statute.

In determining whether an inadvertent release of privileged documents constitutes a "disclosure" for purposes of section 6254.5, we apply the familiar rules governing

7

statutory interpretation.  "Our primary task in interpreting a statute is to determine the Legislature's intent, giving effect to the law's purpose.  [Citation.]  We consider first the words of a statute, as the most reliable indicator of legislative intent."  (*Tuolumne Jobs & Small Business Alliance v. Superior Court* (2014) 59 Cal.4th 1029, 1037 (*Tuolumne Jobs*).)  " ' "When interpreting statutes, we begin with the plain, commonsense meaning of the language used by the Legislature.  [Citation.]  If the language is unambiguous, the plain meaning controls." ' "  (*Riverside County Sheriff's Dept. v. Stiglitz* (2014) 60 Cal.4th 624, 630 (*Stiglitz*).)  "To the extent statutory language is ambiguous or open to more than one reasonable interpretation, we may turn to legislative history for guidance."  (*Tuolumne Jobs*, at p. 1040.)  Other " ' " 'extrinsic aids' " ' " to the interpretation of a statute, available when the language is " ' "unclear or ambiguous," ' " are " ' " 'the ostensible objects to be achieved, the evils to be remedied, . . . public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.' " ' "  (*People v. Scott* (2014) 58 Cal.4th 1415, 1421.)  " ' "Ultimately we choose the construction that comports most closely with the apparent intent of the lawmakers, with a view to promoting rather than defeating the general purpose of the statute." ' "  (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1369.)

   " ' "[It] is a 'familiar rule, that a thing may be within the letter of the statute and yet not within the statute, because not within . . . the intention of its makers.' " ' [Citation.]  Where . . . no single textually determined construction presents itself, we are well advised not to stop with the most plausible reading but to consult other interpretive aids, including legislative history and the context of the enactment."  (*City of Los Angeles v. County of Kern* (2014) 59 Cal.4th 618, 628 (*County of Kern*).)  " ' "[W]e may reject a literal construction that is contrary to the legislative intent apparent in the statute or that would lead to absurd results . . . ." ' "  (*Stiglitz, supra*, 60 Cal.4th at p. 630.)

   **1.  *Reasonable and Plausible Interpretations***

   Under the long-established principles of statutory interpretation, we first consider the " ' "plain, commonsense meaning" ' "  (*Stiglitz, supra*, 60 Cal.4th at p. 630) of "disclose" to determine whether it can accommodate the two meanings urged by the

8

parties.  In determining that meaning, we begin with the definitions of "disclose" from two online dictionaries:  "to expose to view" or *"to make known or public"* (Merriam-Webster Online Dict. (2015) <http://www.merriam-webster.com/dictionary/disclose> [as of July 31, 2015]) and "to make known; reveal or uncover" or "to cause to appear; allow to be seen; lay open to view" (Dictionary.com (2015) <http://dictionary.reference.com/browse/disclose?s=t> [as of July 31, 2015].).  While these definitions certainly include the meaning urged by Brazil, essentially to "reveal," what is also common to them is a sense of purpose:  to "*expose*," to "*make* known," to "*allow*," to "*lay* open."  (Italics added.)  These do not seem to be events that happen by accident.

A similar sense of intent is arguably inherent in our everyday use of the term.  If the District had mailed a set of the documents to the wrong address, would we say the privileged documents were "disclosed" to the unintended recipient?  Or were they merely communicated?  Alternatively, if the District's lawyer had been overheard whispering to the interim superintendent, were the communications "disclosed" to the eavesdropper?  Or did the eavesdropper merely learn of them?  While it is certainly sensible to use the term "disclosure" in both these circumstances, it is not necessarily the first choice, precisely because a disclosure is typically not something that occurs by accident.

The ambiguity in the meaning of "disclosure" is reflected in the courts' well-accepted interpretation of Evidence Code section 912, which governs waiver of the attorney-client and similar privileges, to exclude waiver based on inadvertent disclosures.  Under subdivision (a) of section 912, the right to claim the specified privileges "is waived . . . if any holder of the privilege, without coercion, has disclosed a significant part of the communication or has consented to disclosure made by anyone."  Despite the statute's declaration that any uncoerced "disclosure" creates a waiver, courts have consistently held that inadvertent disclosures do not.  In the leading case, *State Comp. Ins. Fund v. WPS, Inc.* (1999) 70 Cal.App.4th 644 (*WPS*), the court read into the statute the requirement that a disclosure be "intentional," notwithstanding the failure of section 912 to distinguish between intentional and inadvertent disclosures.  (*WPS*, at

9

p. 653.) The court concluded, "Based on the language of Evidence Code section 912, we hold that 'waiver' does not include accidental, inadvertent disclosure of privileged information by the attorney." (*Id.* at p. 654.) That holding has not been judicially challenged, nor has the Legislature seen fit in the 16 years since *WPS* to amend section 912 to bring inadvertent disclosures within its reach. On the contrary, by enacting Code of Civil Procedure section 2031.285 in 2009 (Stats. 2009, ch. 5, § 18), the Legislature codified the rule, at least as to electronically stored materials produced during discovery.[4] This is consistent with the long-standing principle that a privilege is not waived in the absence of a manifest intent to waive. (E.g., *Torbensen v. Family Life Ins. Co.* (1958) 163 Cal.App.2d 401, 404.)

Finally, as suggested above, the concept of "waiver" itself is ambiguous in its requirement of intent. " 'While "waiver" generally denotes the voluntary relinquishment of a known right, it can also refer to the loss of a right as a result of a party's failure to perform an act it is required to perform, regardless of the party's intent to relinquish the right.' " (*Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 374.) It is not clear from the plain language of section 6254.5 whether the waiver of exemption effected by the statute was meant to require an intentional act. Because a finding of waiver is based on a "disclosure," the uncertainty in the requirements for waiver extends to that term as well. The statute could reasonably accommodate either meaning proposed by the parties.

_____

[4] Code of Civil Procedure section 2031.285 states, in part: "(a) If electronically stored information produced in discovery is subject to a claim of privilege or of protection as attorney work product, the party making the claim may notify any party that received the information of the claim and the basis for the claim. [¶] (b) After being notified of a claim of privilege or of protection under subdivision (a), a party that received the information shall immediately sequester the information and either return the specified information and any copies that may exist or present the information to the court conditionally under seal for a determination of the claim." Necessarily, the statute presumes that mere disclosure of privileged information in response to a discovery request does not waive the privilege.

It might seem we are splitting grammatical hairs here, but our purpose is not to settle the plain meaning of "disclosure." Rather, the issue is whether the plain meaning can accommodate the alternative meanings proposed by the parties; that is, whether they are "reasonable" (*Tuolumne Jobs, supra*, 59 Cal.4th at p. 1040) or "plausible" (*County of Kern*, *supra*, 59 Cal.4th at p. 628) meanings. While "disclosure" could refer to any action by which documents are communicated, as Brazil argues, it is also both reasonable and plausible to restrict the use of the term to intended communications, thereby excluding the type of inadvertent release that occurred here. Given our conclusion the plain meaning of section 6254.5 is ambiguous, it is appropriate to turn to extrinsic aids to determine legislative intent.

### 2. *Legislative History*

In seeking to learn the Legislature's purpose in enacting section 6254.5, we turn first to the legislative history. That examination demonstrates persuasively that the intent of section 6254.5 was unrelated to the inadvertent release of privileged documents.[5]

The bill creating section 6254.5, Senate Bill No. 879 (1981–1982 Reg. Sess.), was enacted in 1981. (Stats. 1981, ch. 968, § 3, p. 3682.) Although section 6254.5 has been amended several times since, the language critical here was present in the statute from the first. Repeatedly in contemporary legislative documents concerning Senate Bill No. 879, it was stated that the portion of the bill containing section 6254.5 was intended to codify existing case law. An enrolled bill report prepared by the California's former Department of Corporations explains: "Proponents of this bill indicate that [proposed section 6254.5] is merely a codification of the views of the Court of Appeal in *Black Panther Party v. Kehoe* (1974) 42 Cal.App.3d 645 regarding 'selective disclosures' by state agencies of 'confidential information.' " (Dept. of Corporations, Enrolled Bill Rep. on Sen. Bill

_____

[5] In considering documents from the bill's legislative history, we take judicial notice of a binder of Senate Bill No. 879 materials maintained in the library of the California Supreme Court, containing copies of contemporary committee analyses, the Governor's chaptered bill file, and the author bill file.

11

No. 879 (1981–1982 Reg. Sess.) Sept. 28, 1981, p. 1.)  A photocopy of the *Black Panther Party v. Kehoe* decision was present in the author's file for the bill.

The plaintiffs in *Black Panther Party v. Kehoe, supra*, 42 Cal.App.3d 645 (*Kehoe*) had filed PRA requests with the Bureau of Collection and Investigative Services (Bureau), the state agency in charge of licensing debt collection agencies, seeking copies of citizen complaints involving these businesses.  (*Id.* at p. 649.)  The Bureau contended the complaints were shielded from disclosure by an exemption for records of complaints and investigations in section 6254, subdivision (f).  After an extensive analysis of the language of subdivision (f), the court agreed.  (*Kehoe*, at pp. 650, 654.)

*Kehoe* nonetheless ordered the documents disclosed on the basis of a "special basis for disclosure" raised by the plaintiffs—that the Bureau "routinely discloses complaints to the affected collection agencies."  (*Kehoe, supra*, 42 Cal.App.3d at p. 655.)  As the court explained:  "The defendant state agencies assert authority to give collection agencies access to citizens' complaints and to deny access to plaintiffs.  The claim is really one of power to indulge in selective disclosure.  The [PRA] impliedly but firmly negates that claim.  After listing 14 permissible exemptions from disclosure, section 6254 declares that its provisions do not prevent 'any agency from opening its records concerning the administration of the agency to public inspection.' [¶] The term *public inspection* necessarily implies general, nonselective disclosure.  It implies that public officials may not favor one citizen with disclosures denied to another.  When a record loses its exempt status and becomes available for public inspection, section 6253, subdivision (a), endows *every citizen* with a right to inspect it.  By force of these provisions, records are completely public or completely confidential.  The [PRA] denies public officials any power to pick and choose the recipients of disclosure.  When defendants elect to supply copies of complaints to collection agencies, the complaints become public records available for public inspection."  (*Id.* at pp. 656–657, fns. omitted.)  This is the ruling section 6254.5 was intended to codify.

Language in legislative history documents, in addition to stating section 6254.5 was intended to codify the holding of *Kehoe*, repeatedly characterized the statute's

12

purpose in language taken from *Kehoe.* A staff analysis, for example, characterized the proposed statute as a "ban on selective withholding of government documents." (Assem. Com. on Governmental Organization, Analysis of Sen. Bill No. 879 (1981–1982 Reg. Sess.) as amended Aug. 11, 1981, p. 3.) Similarly, the author of the bill stated in a press release that the bill would "[p]rohibit selective withholding of government documents. Once officials showed documents to any members of the public, they would become public records available to everyone." Again, in an enrolled bill report: "once a document has been released to any member of the public, it becomes open to public scrutiny." (Dept. of Social Services, Enrolled Bill Rep. on Sen. Bill No. 879 (1981–1982 Reg. Sess.) Sept. 28, 1981, p. 1.) The Legislature's purpose in enacting section 6254.5, then, was to prevent government officials from manipulating the PRA exemptions by asserting them against some members of the public while waiving them as to others. The statute, in essence, was intended to require agencies to maintain an applicable exemption as to all members of the public or not at all.

While finding a waiver of the privilege exemption as to documents inadvertently released is not inconsistent with this purpose, it is outside the Legislature's central concern. As *Kehoe* and the legislative history documents suggest, the target of section 6254.5 was "selective" disclosure: picking and choosing by an agency of the members of the public to whom documents will be released.[6] While Brazil characterizes the District's inadvertent disclosure as "selective" merely because it is made to a particular group of recipients, rather than to the public as a whole, this misunderstands the meaning of "selective" as used in *Kehoe*. When a release is inadvertent, no "selection" occurs because the agency has not exercised choice in making the release. It was an accident. Accordingly, an inadvertent release does not involve an attempt to

---

[6] The "exceptions" to waiver of the exemptions, listed in subdivisions (a) through (i) of section 6254.5, illustrate the Legislature's focus on selective disclosure. Each of these exceptions permits disclosure by a specified governmental body to specified entities and persons, for a specified purpose. In the case of these exceptions, the Legislature has declared such selective disclosure permissible, in contrast to the general rule of section 6254.5.

assert the exemption as to some, but not all, members of the public, the problem section 6254.5 was intended to address. The inadvertent release of privileged documents thus appears to be an example of " ' " 'a thing . . . within the letter of the statute and yet not within the statute, because not within . . . the intention of its makers.' " ' " (*County of Kern, supra*, 59 Cal.4th at p. 628.)

### 3. *Conflict with Evidence Code Section 912*

Although inadvertent disclosures were not within the contemplation of the Legislature when it enacted section 6254.5, that does not require us to interpret the statute to exclude them, since inadvertent disclosures are within a reasonable interpretation of the statutory language and are not inconsistent with the Legislature's purpose. Rather, we are compelled to interpret section 6254.5 to exclude inadvertent disclosures in order to avoid a conflict with Evidence Code section 912.

As discussed above, Evidence Code section 912 finds a waiver of the attorney-client and attorney work product privileges "if any holder of the privilege, without coercion, has disclosed a significant part of the communication or has consented to disclosure made by anyone." (*Id.*, subd. (a).) On its face, the statute applies equally with Government Code section 6254.5 to the present situation; both involve disclosures of documents protected by the applicable privileges.[7] Nothing in the language of Evidence Code section 912 restricts its application to disclosures in litigation discovery.[8] Yet, as

---

[7] Contrary to *O'Mary v. Mitsubishi Electronics America, Inc.* (1997) 59 Cal.App.4th 563 (*O'Mary*), we do not view the inadvertent release of documents in response to a discovery request to be "coerced" and therefore outside Evidence Code section 912. (*O'Mary*, at p. 577.) If that were the case, even an intentional release of privileged documents would not waive the privilege, since all releases that occur pursuant to the discovery statutes, whether intentional or inadvertent, would be equally "coerced." Yet to the extent an inadvertent release of privileged documents in response to a discovery request is "coerced" for purposes of Evidence Code section 912, an inadvertent release in response to a PRA request is as well. Either way, the statutes conflict.

[8] It is technically possible to distinguish section 6254.5 as waiving only the PRA exemption from disclosure, rather than the underlying evidentiary privilege, while Evidence Code section 912 addresses the privilege. Under this argument, a finding that an inadvertent disclosure has waived the exemption under section 6254.5 would not

14

discussed above, judicial interpretation of Evidence Code section 912 dating back nearly two decades holds that the inadvertent disclosure of documents covered by these privileges does not effect a waiver. (*WPS, supra*, 70 Cal.App.4th at p. 653; *O'Mary, supra*, 59 Cal.App.4th at p. 577.) Accordingly, if Brazil's construction of Government Code section 6254.5 is adopted, the statutes would be potentially in conflict.

When two statutes potentially conflict, our first task is not to declare a winner, but instead to find a way, if possible, to avoid the conflict. This principle was reiterated most recently in *State Dept. of Public Health v. Superior Court* (2015) 60 Cal.4th 940 (*DPH*), in which the Supreme Court addressed two statutes governing the confidentiality of citations issued to long-term care facilities. One statute appeared to declare copies of the citations to be available under the PRA (*DPH*, at p. 951), while the other labeled them confidential (*id.* at pp. 952–953). In addressing the apparent conflict, the court noted its first duty was to attempt to close the gap between them.

" ' "A court must, where reasonably possible, harmonize statutes, reconcile seeming inconsistencies in them, and construe them to give force and effect to all of their provisions. [Citations.] This rule applies although one of the statutes involved deals generally with a subject and another relates specifically to particular aspects of the subject." [Citation.] Thus, when " 'two codes are to be construed, they "must be regarded as blending into each other and forming a single statute." [Citation.] Accordingly, they "must be read together and so construed as to give effect, when possible, to all the provisions thereof." [Citation.]' " [Citation.] Further, " ' "[a]ll presumptions are against a repeal by implication. [Citations.]" [Citation.] Absent an

---

constitute a finding of waiver as to the underlying privilege under Evidence Code section 912. While this distinction might have some appeal in theory, as practical matter it is a distinction without a difference. Once the exemption is lost, the harm against which the privilege protects—the disclosure of confidential information—occurs. Further, there is a significant risk that the public availability of the document would be found to work a loss of the privilege, precisely because confidentiality has been lost. We therefore find the theoretical distinction between waiver of an exemption based on privilege and waiver of the underlying privilege to be of no legal significance. For public agencies, loss of a PRA exemption based on privilege is tantamount to loss of the privilege.

15

express declaration of legislative intent, we will find an implied repeal "only when there is no rational basis for harmonizing the two potentially conflicting statutes [citation], and the statutes are 'irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation.' " ' " ' [Citations.] [¶] But the requirement that courts harmonize potentially inconsistent statutes when possible is not a license to redraft the statutes to strike a compromise that the Legislature did not reach. [Citation.] The cases in which we have harmonized potentially conflicting statutes involve choosing one plausible construction of a statute over another in order to avoid a conflict with a second statute. [Citations.] This canon of construction, like all such canons, does not authorize courts to rewrite statutes." (*DPH, supra*, 60 Cal.4th at pp. 955–956.)

The *DPH* court ultimately found the two statutes before it impossible to reconcile and was required to apply the various doctrines designed to select between conflicting statutes. (*DPH, supra*, 60 Cal.4th at pp. 960–961.) We do not face that situation. As discussed above, section 6254.5 can plausibly be interpreted to exclude the inadvertent release of documents from its scope. By adopting that interpretation, we avoid any potential conflict with Evidence Code section 912. Further, for the reasons discussed above, such an interpretation would do no violence to the objectives of the Legislature in enacting section 6254.5. Genuine selective disclosure of privileged documents by public agencies would continue to result in a waiver of the exemption from disclosure of those documents as to all members of the public.

While we adopt this interpretation of section 6254.5 in the interests of statutory harmony, solid policy grounds support it. Protection of the attorney-client privilege is regarded as fundamental to the administration of justice, and its waiver is disfavored. "Without [the privilege], full disclosure by clients to their counsel would not occur, with the result that the ends of justice would not be properly served." (*WPS, supra*, 70 Cal.App.4th at p. 657.) "[A] waiver of confidentiality is not to be assumed lightly: 'In considering whether the attorney-client privilege has been waived, we start with the proposition that . . . : "The privilege of confidential communication between client and attorney should be regarded as sacred. It is not to be whittled away by means of

16

specious argument that it has been waived.  Least of all should the courts seize upon slight and equivocal circumstances as a technical reason for destroying the privilege." ' " (*People v. Gardner* (1980) 106 Cal.App.3d 882, 888.)  Because it would result in a waiver of this critical privilege, the interpretation of section 6254.5 urged by Brazil begins with a strike against it.

In addition, an interpretation favoring waiver leaves the PRA open to manipulation.  It is not unusual for PRA requests to be made by counsel opposing a public agency in litigation as an alternative or supplement to ordinary discovery.  An attorney who receives inadvertently produced documents during discovery has an ethical duty to refrain from unnecessary review of the documents, notify opposing counsel, and return the documents upon request.  (*Rico v. Mitsubishi Motors Corp.* (2007) 42 Cal.4th 807, 817–818.)  If mere inadvertent release of privileged documents under the PRA creates a waiver of the attorney-client and attorney work product privileges, however, counsel receiving such documents are presumably under no similar ethical duty to refrain from review and return them, since the documents are no longer privileged by the time they come into the attorney's possession.  These differing consequences encourage attorneys litigating against a public agency to accompany every discovery request with an identical PRA request, merely on the chance that an inadvertent production of privileged documents should occur.  This is just the type of " 'gotcha' theory of waiver" decried by *O'Mary* in concluding inadvertent disclosures do not result in a waiver under Evidence Code section 912.  (*O'Mary, supra*, 59 Cal.App.4th at p. 577.)

### 4.  *Interpretive Rule of the State Constitution*

Brazil argues article I, section 3 of the state Constitution requires us to construe Government Code section 6254.5 as creating a waiver of privilege in these circumstances, regardless of any conflict with Evidence Code section 912.  Added by proposition in 2004, subdivision (b) of section 3 declares:  "The people have the right of access to information concerning the conduct of the people's business . . . ."  (Cal. Const., art. I, § 3, subd. (b)(1).)  Implementing that declaration, the section requires California statutes to be "broadly construed if it furthers the people's right of access, and narrowly

17

construed if it limits the right of access." (*Id.*, subd. (b)(2).) At the same time, subdivision (b)(5) of section 3 provides: "This subdivision does not repeal or nullify, expressly or by implication, any constitutional or statutory exception to the right of access to public records or meetings of public bodies that is in effect on the effective date of this subdivision . . . ." In *Sierra Club v. Superior Court* (2013) 57 Cal.4th 157 (*Sierra Club*), the Supreme Court characterized these provisions as "a rule of interpretation that is specific to" the PRA. (*Sierra Club*, at p. 166.) The court explained the interaction of subdivisions (b)(2) and (b)(5) as follows: "[I]n light of article I, section 3, subdivision (b)(5) of the Constitution, we may not countermand the Legislature's intent to exclude or exempt information from the PRA's disclosure requirements where that intent is clear. But to the extent that legislative intent is ambiguous, the California Constitution requires us to 'broadly construe[]' the PRA to the extent 'it furthers the people's right of access' and to 'narrowly construe[]' the PRA to the extent 'it limits the right of access.' " (*Sierra Club*, at p. 166.)

If not for the conflict it would create with Evidence Code section 912, we might well agree with Brazil that article I, section 3 of the Constitution requires us to construe Government Code section 6254.5 to require a waiver of the privilege when privileged documents are inadvertently produced. As discussed above, the Legislature by no means expressed a clear intent to exclude inadvertently produced privileged documents from waiver under section 6254.5. Although an examination of the legislative history of the statute reveals that inadvertently produced privileged documents were not the focus of the legislation, such documents are arguably within the scope of its waiver language. Article I, section 3 of the Constitution weighs in favor of adopting an interpretation resulting in greater disclosure.

We decline to adopt Brazil's proposed construction of section 6254.5, however, because of the imperative to avoid creating statutory conflicts. As discussed above, Evidence Code section 912 and Government Code section 6254.5 are equally applicable to govern the waiver of privilege in these circumstances. Twenty years of consistent judicial interpretation of Evidence Code section 912 hold that the inadvertent production

of privileged documents does not effect a waiver of the privilege. That statute cannot, at this late date, be interpreted to the contrary. Accordingly, if we were to adopt Brazil's interpretation of section 6254.5, the two statutes would dictate diametrically, and irreconcilably, opposed results in these circumstances. Because reconciling the statutes would be impossible, it would become necessary to choose between them.

That is not the preferred method for resolving statutory conflict. "Our duty is to harmonize statutes wherever possible." (*County of San Bernardino v. City of San Bernardino* (1997) 15 Cal.4th 909, 933.) As explained in *DPH, supra,* 60 Cal.4th 940, " ' " ' "[a]ll presumptions are against a repeal by implication. [Citations.]" [Citation.] Absent an express declaration of legislative intent, we will find an implied repeal "only when there is no rational basis for harmonizing the two potentially conflicting statutes [citation], and the statutes are 'irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation.' " ' " ' " (*Id.* at p. 955.) In taking this approach, we are able to " 'maintain the integrity of both statutes,' " thereby honoring the presumed intent of the Legislature. (*Garcia v. McCutchen* (1997) 16 Cal.4th 469, 477; see similarly *Pacific Lumber Co. v. State Water Resources Control Bd.* (2006) 37 Cal.4th 921, 943 [" ' " ' "The courts are bound, if possible, to maintain the integrity of both statutes if the two may stand together." ' " ' "].)

The need to reconcile these statutes, if feasible, takes precedence over the interpretive directive of section 3 of article I of the Constitution. Further, as the express preservation of legislative exemptions from public disclosure in subdivision (b)(5) of section 3 demonstrates, the interpretive rule of subdivision (b)(2) was intended to defer to contrary legislative judgments regarding the appropriate scope of public records disclosure. Reasonably reconciling the Legislature's enactments on the scope of privilege waiver is the most appropriate means for giving effect to its judgment in these circumstances.

## C. *Other Contrary Arguments*

Amici argue the District was precluded from bringing an action to recover the inadvertently released documents by *Filarsky, supra*, 28 Cal.4th 419, in which the

Supreme Court held a public agency could not maintain a preemptive action for declaratory relief with respect to its obligation to produce documents in response to a PRA request. Rather, the court held, an action by the requesting party under section 6258 is "the exclusive procedure in these circumstances for litigating disputes regarding a person's right to obtain disclosure of public records under the [PRA]." (*Filarsky*, at p. 433.) As the court's careful choice of words suggests, *Filarsky*'s holding was narrowly drawn to address only the circumstances before it. "The California Supreme Court [in *Filarsky*] neither considered nor resolved the broader issue . . . : whether the CPRA precludes a person from initiating an action of any kind to resolve any issue 'concerning' public records *other than* the question of whether a public entity has wrongly refused to disclose a particular record or class of records." (*County of Santa Clara v. Superior Court* (2009) 171 Cal.App.4th 119, 129–130.) The situation in *Filarsky* was considerably different from ours. Brazil does not contend she had a *right* to obtain the privileged documents; she merely maintains that, once released, the documents cannot be taken back. Nor was the District's action preemptive. By its terms, *Filarsky* does not apply.

Further, we are reluctant to stretch *Filarsky* to cover these circumstances because we are unwilling to adopt an interpretation of the PRA that would leave a public agency with no means to recover improperly released documents. Putting aside the issue of privileged documents, there can be no question that inadvertently released documents *within* the express exclusions from waiver in section 6254.5—for example, documents containing confidential third party financial or health information—should be recoverable, given the serious privacy interests involved in the improper disclosure of such documents. (*Id*., subds. (f)–(i).) Given the clear statement in section 6254.5 that release does not create a waiver of the exemption from disclosure of such documents, it would frustrate the legislative purpose to construe section 6258 as precluding any means for their recovery. Because, as we have construed section 6254.5, privileged documents inadvertently released are similarly excluded from waiver, such documents would be recoverable in the same manner. We have been presented with no basis for concluding

20

the current action for injunctive relief is an inappropriate method for obtaining such relief.

Brazil and amici argue that the attempt to recover documents released to the public through the PRA is likely to be more difficult than recovering documents inadvertently produced in discovery. Documents produced in discovery are provided to attorneys, who, as noted, have an ethical obligation not to review inadvertently produced privileged documents, to notify the producing party, and to return the documents upon request. (*Rico v. Mitsubishi Motors Corp., supra,* 42 Cal.4th at pp. 817–818; *WPS, supra*, 70 Cal.App.4th at pp. 656–657.) Members of the public who receive privileged documents in response to a PRA request, in contrast, are under no such duty. Accordingly, it is far more likely that such documents will be disseminated to third parties, making it difficult, if not impossible, to preserve their confidentiality.

While we acknowledge the validity of this concern, we view the dissemination of privileged documents as a circumstance for trial courts to take into consideration in granting relief to a public agency, rather than as a basis for preemptively denying relief in all circumstances. It may well be that an agency's delay in seeking the return of privileged documents released to members of the public has made it impossible for a court to grant effective relief, but that will not necessarily be the case. Contrary to the finding of the trial court, the record does not support such a finding here. The District sought return of the inadvertently produced documents within hours of their release. Although Snyder's unsworn opposition suggested the documents had been disseminated, she submitted no actual proof their confidentiality had been irretrievably compromised. Rather, there was evidence of the documents' review by only one member of the public other than Snyder, and there was no showing that copies of the documents were in the hands of persons outside the reach of the court's TRO. While we recognize the *potential* for a loss of confidentiality, since, as the trial court recognized, Snyder created an online folder and several hard and electronic copies of the documents were disseminated, there was no actual *evidence* of it. On the basis of the present record, we have no reason to conclude that effective relief cannot be granted in this case.

21

Amici are also rightly concerned that, in attempting to preserve the confidentiality of inadvertently released documents, courts might be tempted improperly to restrict the use that may be made of such documents once disseminated to third parties. Again, we view this as an issue to be considered on a case-by-case basis, rather than as a reason to bar any relief. Because the District's complaint seeks only the return or destruction of privileged documents in the hands of the persons to whom they were released, we have no reason to consider the propriety of more intrusive relief.[9]

Finally, our decision in *Masonite Corp. v. County of Mendocino Air Quality Management Dist.* (1996) 42 Cal.App.4th 436, discussed waiver under section 6254.5, but *Masonite* neither addressed nor purported to address the present circumstances. As relevant here, the corporate plaintiff in *Masonite* had filed with a public agency a series of documents that failed properly to designate trade secret information. (*Id.* at pp. 441–442.) It sought to prevent disclosure of the documents containing the trade secrets to third parties under the PRA on the ground they contained trade secrets. (*Masonite*, at p. 453.) Interpreting provisions of the Health and Safety Code applicable to the specific documents at issue, the court held that they became public records when filed, thereby waiving any trade secret claim. (*Masonite*, at pp. 453–454.) In addition, the *Masonite* court noted, its decision was "reinforced" by the provisions of section 6254.5, which hold that a disclosure of otherwise protected documents by a public employee acting within the proper scope of his or her duties creates a waiver. (*Masonite*, at pp. 454–455.) Because this comment assumed an intentional rather than inadvertent release of documents by the public agency, its ruling has no bearing on, and plainly did not purport to address, the consequences of an inadvertent release.

---

[9] Amici also argue certain of the documents listed on the privilege log are not actually privileged. While we decline to address the validity of amici's argument, which was not raised in the trial court, this issue can presumably be raised with the trial court on remand. We have not granted the District's request for a writ of mandate directing return of the documents because this and other issues, such as the availability of effective relief, remain to be resolved.

22

### III. DISPOSITION

Let a peremptory writ of mandate issue commanding respondent Superior Court of Alameda County, in its case No. RG14738281, (1) to vacate its amended order of September 9, 2014, denying the District's request for a temporary restraining order requiring real parties to refrain from dissemination of inadvertently produced privileged documents; and (2) to resume and complete these proceedings as to real party Elizabeth Brazil in a manner consistent with this decision. Pending further order of the trial court, the temporary restraining order precluding real parties' review and dissemination of the privileged documents is continued in effect. The District is entitled to costs incurred in these writ proceedings. (See Cal. Rules of Court, rule 8.493(a)(1)(A).)

_____
Margulies, Acting P.J.

We concur:


_____
Dondero, J.


_____
Banke, J.

Trial Court:   Alameda County Superior Court

Trial Judge:   Hon. Evelio M. Grillo

Counsel:

Lozano Smith, Jerome Behrens, Steve Ngo and Frances Valdez for Petitioner Newark Unified School District.

Paul Nicholas Boylan for Real Party in Interest Elizabeth Brazil.

Paul Nicholas Boylan for The Sacramento Valley Mirror, Lake County News, The People's Vanguard of Davis, Rio Dell Times, The Woodland Record and Daniel Webster as Amicus Curiae on behalf of Real Party in Interest Elizabeth Brazil.

Law Offices of Kelly A. Aviles, Kelly A. Aviles for First Amendment Coalition, Californians Aware, California Newspaper Publishers Association, Los Angeles Times Communications LLC, The Sacramento Bee, Los Angeles News Group, Station Venture Operations, KFMB CBS 8 San Diego and *inewsource* as Amicus Curiae on behalf of Real Party in Interest Elizabeth Brazil.

Filed 3/17/16

Court of Appeal, First Appellate District, Division One - No. A142963

**S229112**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

_____

NEWARK UNIFIED SCHOOL DISTRICT, Petitioner,

v.

SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;

ELIZABETH BRAZIL, Real Parties in Interest.

_____

The Reporter of Decisions is directed to publish the Court of Appeal opinion in the above-entitled matter in the Official Reports.  (Cal. Rules of Court, rule 8.1105(e)(2).)

_____

*Chief Justice*